556 F.2d 214
 95 L.R.R.M. (BNA) 2457, 81 Lab.Cas. P 13,220,
2 Media L. Rep. 2002
 The COMMITTEE ON MASONIC HOMES OF the R. W. GRAND LODGE, F.
&. A. M. OF PENNSYLVANIA, Appellee,
v.
The NATIONAL LABOR RELATIONS BOARD, Appellant, et al., and
Peter W. Hirsch, Regional Director, National Labor Relations
Board Region Four and John S. Irving, General Counsel,
National Labor Relations Board,
American Federation of Grain Millers, AFL-CIO, Intervenor.
 No. 76-1925.
 United States Court of Appeals, Third Circuit.
 Argued March 31, 1977.
Decided May 9, 1977.
 
 Martin J. Sobol, Julius M. Steiner, Stephen J. Cabot, Pechner, Dorfman, Wolffe, Rounick & Cabot, for appellee.
 William Wachter, John G. Elligers, John S. Irving, John E. Higgins, Jr., Carl L. Taylor, Elliott Moore, N. L. R. B., Washington, D. C., Ira H. Weinstock, James L. Cowden, Handler, Gerber & Weinstock, Harrisburg, Pa., for intervenor-appellant.
 Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City for National Union of Hospital and Health Care Employees, Division of R.W.D.S.W., AFL-CIO.
 Miriam L. Gafni, Markowitz & Kirschner, Philadelphia, Pa. for District 1199C National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL-CIO.
 Before SEITZ, Chief Judge, and ALDISERT and HUNTER, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This appeal presents an issue not previously considered by an appellate court: whether an employer can use the Freedom of Information Act, 5 U.S.C. § 552, to obtain copies of the individual union cards that were submitted to the National Labor Relations Board (NLRB) in support of a petition by the union for a representation election. The lower court found no exemption applicable, and ordered disclosure.[1] We vacate that order, for the following reasons.
 
 I.
 
 2
 On February 20, 1976, the American Federation of Grain Millers, AFL-CIO, filed a representation petition with the regional office of the NLRB, on behalf of employees of a nursing home operated by the plaintiff (Masonic Homes) in Elizabethtown, Pennsylvania. The petition described the unit as including "All employees of Masonic Homes at Elizabethtown, PA." and numbering "Approx. 320." Question 6b "Is this petition supported by 30% or more of the employees in the unit?" was checked "yes." Union cards, signed by individual employees, were presented along with the petition, to substantiate the thirty-percent showing of support.
 
 
 3
 On March 2, 1976, the Regional Director sent a copy of the petition with a "notice of representation hearing" to Masonic Homes. An attorney for Masonic Homes responded, on March 6, 1976, with a letter challenging the sufficiency of the union's showing of support. The specific objection was that the petition claimed a unit numbering 320, but the employer's payroll records would fix the number at 480 or more. The hearing, originally scheduled for March 10, 1976, was rescheduled for March 23 and 24.
 
 
 4
 Then, on March 15, 1976, the employer sent the following letter to the Regional Director:
 
 Dear Mr. Hirsch:
 
 5
 Pursuant to the applicable provisions of the Freedom of Information Act and Section 102.117 of the Board's Rules and Regulations, counsel for Employer in the above captioned matter hereby requests the following information:
 
 
 6
 1. All authorization cards submitted by the Petitioner as evidence of its showing of interest.
 
 
 7
 2. Any documents indicating the Region's final determination of the Petitioner's showing of interest or lack thereof.
 
 
 8
 Counsel for Employer requests the above mentioned information in view of the fact that it wishes to attack the validity of the signatures, the manner in which the cards were solicited and the accuracy of the dates of the cards.
 
 
 9
 Counsel for Employer will assume the financial burden for any costs incurred regarding the reproduction of the information requested above.
 
 
 10
 Thank you very much for your cooperation in this matter.
 
 
 11
 App. at 30-31. In addition, Masonic Homes requested a further postponement of the hearing.
 
 
 12
 The Regional Director, on March 19, 1976, denied the request for disclosure, claiming exemption under sections 5, 6, 7(A), and 7(C) of the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5), (6), (7), (A) and (C). On the same day, Masonic Homes appealed to the NLRB. The Board, on March 24, 1976, affirmed the Regional Director's refusal to disclose, mainly because "the FOIA was not intended to serve as a discovery tool. . . . Further, the sufficiency of a showing of interest in support of a petition is a matter for administrative investigation and determination by the regional director not subject to litigation." App. at 37.
 
 
 13
 On March 22, 1976, Masonic Homes filed a complaint in the United States District Court for the Eastern District of Pennsylvania, under the Freedom of Information Act, and requested a temporary restraining order against further NLRB proceedings. The request for a temporary restraining order was denied. The request for disclosure of the union authorization cards and the agency documents, however, was granted. On a motion for summary judgment, the district court held that authorization cards fall outside any exemption, and specifically discussed exemptions 6, 7(C), and 7(D). The requested "documents indicating the Region's final determination of the petitioner's showing of interest or lack thereof" were found not to fit exemption 5. The request for an injunction against further NLRB proceedings pending receipt of the information ordered disclosed was denied. On the disclosure issue, though, NLRB was enjoined from withholding the requested information, and ordered to produce it for inspection within ten days. The NLRB filed this appeal, and the district court granted a stay of its disclosure order pending the disposition on appeal.
 
 II.
 
 14
 Union authorization cards are cards signed by employees, authorizing a certain union to represent them, "for all purposes of collective bargaining in respect to wages, hours and other conditions of employment".[2] See 29 U.S.C. § 159(a). During an organizational campaign, employees are asked to sign a card. The union collects them, and when thirty percent of the employees have signed, it may send those cards, together with a petition for a representation election, to the regional director of the NLRB. See 29 U.S.C. § 159(c).
 
 
 15
 The director then reviews the petition, and, if satisfied by the showing of support, orders a hearing. At that hearing the employer can challenge such items as the appropriateness of the bargaining unit. The employer cannot, however, challenge the sufficiency of the employee showing of interest; that is an issue to be determined by the NLRB. Linden Lumber v. NLRB, 419 U.S. 301, 309, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974).
 
 
 16
 If an election is then ordered, employees vote for or against the union by secret ballot. 29 U.S.C. § 159(c)(1). Thus, the employer is prevented from finding out, at any time, which employees have supported the union. Indeed, attempts to determine particular employee's union sentiments have often produced charges of unfair labor practices. E. g., NLRB v. Historic Smithville Inn, 414 F.2d 1358, 1362 (3d Cir. 1969), cert. denied, 397 U.S. 908, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970). For this reason, an employer ordinarily cannot see the cards signed by its employees indicating their preference for the union.[3] NLRB v. New Era Die Co., 118 F.2d 500 (3d Cir. 1941). Here, Masonic Homes is attempting to avoid the reach of that general rule by invoking the Freedom of Information Act, 5 U.S.C. § 552.
 
 
 17
 Because the cards are now in the possession of the NLRB, claims Masonic Homes, they are government records subject to disclosure under the Act, 5 U.S.C. § 552.[4] The NLRB has the burden of proof in its claim that it can refuse to disclose the cards, since there is a well-known presumption in favor of disclosure. E. g., Dept. of Air Force v. Rose, 425 U.S. 352, 361-62, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).
 
 
 18
 The NLRB and the union insist the cards are privileged, and exempt from disclosure under sections 7(A) and 7(C) of the Act, 5 U.S.C. § 552(b), 7(A), 7(C). An amicus, the National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL-CIO, adds exemption 6, 5 U.S.C. § 6. The district court considered each of these exemptions and found none applicable.
 
 
 19
 We agree that exemptions 7(A) and 7(C) do not apply to union authorization cards submitted as the thirty percent showing in support of a petition for a representation election. Section 7 (as amended) provides an exemption for "investigatory records compiled for law enforcement purposes," but only if, and to the extent that, disclosure would result in one of the specifically listed harms.4a Freedom of Information Act Amendments of 1974, Pub.L. No. 93-502, §§ 1-3, 88 Stat. 1561-1564 (amending 5 U.S.C. § 552).
 
 
 20
 We do not consider the authorization cards in these circumstances as being "compiled for law enforcement purposes." In Roger J. Au & Son, Inc. v. NLRB, 538 F.2d 80 (3d Cir. 1976), where we did allow exemption under section 7, the employer was the target of a pending unfair labor practice complaint, seeking disclosure of witnesses' written statements contained in the NLRB case file. See also, Title Guarantee Co. v. NLRB, 534 F.2d 484 (2d Cir. 1976); Wellman Industries, Inc. v. NLRB, 490 F.2d 427 (4th Cir.), cert. denied, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974). In fact, in the only cases where cards have been the subject of a disclosure request, the employer was also in the midst of an unfair labor practice proceeding.[5] Those NLRB records were clearly compiled for law enforcement purposes.
 
 
 21
 Here, the NLRB argues that it has an enforcement purpose, for which the cards were "compiled" the purpose of enforcing the National Labor Relations Act (NLRA). We do not find this enough. If it were, any records compiled by the NLRB would fit the initial requirement of section 7. We think "law enforcement purposes" must relate to some type of formal proceeding, and one that is pending.[6] The 1965 Senate Report says clearly of exemption 7 investigatory files compiled for law enforcement purposes: "These are the files prepared by Government agencies to prosecute law violators."[7] S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965) (hereinafter cited as 1965 Senate Report).
 
 
 22
 We now turn to section 6, which provides an exemption for
 
 
 23
 personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
 
 
 24
 5 U.S.C. § 552(b)(6). The 1965 Senate Report describes "a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." 1965 Senate Report, supra at 9. The House Report also refers to a balancing policy: "The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information by excluding those kinds of files the disclosure of which might harm the individual." H.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966).
 
 
 25
 We have previously examined section 6 in Wine Hobby USA, Inc. v. IRS, 502 F.2d 133 (3d Cir. 1974),[8] where we explained:
 
 
 26
 To qualify under Exemption (6), the requested information must consist of "personnel, medical or similar files," and the disclosure of the material must constitute a "clearly unwarranted invasion of personal privacy."
 
 
 27
 Id. at 135.
 
 
 28
 The first hurdle, then, is to determine whether the union cards held by the NLRB are "similar files."[9] We will not construe this term in a narrow, technical way if to do so would defeat the purpose of exemption 6. Wine Hobby, supra at 135 (broad interpretation necessary to allow crucial inquiry of privacy invasion). The Supreme Court has indicated approval of our broad interpretation. See Dept. of Air Force v. Rose, 425 U.S. 352, 375 n. 14, 96 S.Ct. 1592, 1605, 48 L.Ed.2d 11 (1976) ("There is sparse legislative history as to the precise scope intended for the term 'personnel files,' a detail which itself suggests that Congress intended that particular characterization not to be critical in the application of Exemption 6.").
 
 
 29
 Even recognizing a limitation that exempt files must in some way be "similar" to personnel and medical files we still categorize the union cards as similar files. The cards contain what is, in effect, a thumb-nail sketch of an employee's job classification and status, in addition to the union authorization. Thus, we have no difficulty in deciding that the cards are "similar files."
 
 
 30
 The more crucial inquiry is whether disclosure of the cards would be a "clearly unwarranted invasion of privacy." In Wine Hobby we applied a balancing test, considering the seriousness of the invasion and the purpose asserted for release.
 
 
 31
 After that opinion, the Supreme Court handed down Dept. of Air Force v. Rose, supra. In its analysis of exemption 6, the Court approved a balancing approach, but one that balances the individual's privacy right against "the preservation of the basic purpose of the Freedom of Information Act". 425 U.S. at 372, 96 S.Ct. at 1604. That basic purpose is "to open agency action to the light of public scrutiny." Id.
 
 
 32
 In Wine Hobby the sole purpose asserted for disclosure was private commercial exploitation. More relevant, in light of the Rose Court's pronouncement, is that "Wine Hobby advanced no direct or indirect public interest purpose in disclosure of these lists and indeed, we can conceive of none." 502 F.2d at 137 (footnote omitted). It is apparent, then, that having found an invasion of privacy, a court must then weigh against the seriousness of that invasion whatever gain would result to "the public."
 
 
 33
 We begin here, then, by first considering whether disclosure of the cards would be an invasion of privacy. The answer is a simple yes. An employee who signed a card was entitled to a private choice, given the policies of the NLRA.
 
 
 34
 Next we ask what the public benefit would be from disclosure. Masonic Homes has asserted its benefit it wants to challenge the signatures and avoid an election. We are not interested in the employer's benefit, though. Rather we must consider the public benefit that would result from the disclosure, to an employer or to anyone, of union authorization cards submitted to support an election petition.
 
 
 35
 At oral argument, Masonic Homes suggested the public would benefit as taxpayers by saving the expense of conducting an election. If this is a benefit, we fear it would be easily off-set by the inevitable card challenge hearings and concomitant appeals.
 
 
 36
 If the basic thrust of the Act is to inform the electorate of the ways in which government agencies operate, the cards will disclose nothing. We will stop short of saying there is no public interest to be balanced here, though, because the presumption is in favor of disclosure.
 
 
 37
 What we must do, then, is to return to the invasion of privacy and examine it in more detail. Especially after Rose, supra, we must ask if the private details could somehow be deleted, so that the rest could be disclosed. But if we try to do this, we are stymied. What the employer wants is the signatures, the exact elements that are clearly private.
 
 
 38
 So, all that remains is to weigh the seriousness of the invasion and the benefit of disclosure. The invasion is serious.[10] Despite the district court's conclusion "I see no reason why a person should be embarrassed or harmed should it come to the employer's or anyone else's attention that such person executed a union authorization card." App. at 14 we do see such harm.
 
 
 39
 For instance, it is entirely plausible that employees would be "chilled" when asked to sign a union card if they knew the employer could see who signed.[11] If so, this is a harm that could not easily be corrected. To order disclosure here would effectively do away with union cards as they are used now. We need only consider whether employees would be as likely to sign a prominently displayed notice at work, "Sign up for the union here. Organize for better working conditions and higher wages." Solicitation of authorization cards plays a vital role in organizational campaigns, and we cannot envision a workable substitute.
 
 
 40
 Furthermore, union elections must be conducted by secret ballot.[12] Whatever reasons and policies lie behind that would be directly undercut by forcing employees to acknowledge in public their support of the union, in order to be given the right to vote in secret for the union.[13]
 
 
 41
 Having found a serious violation of privacy and no significant public interest in disclosure, we conclude that the union authorization cards are exempt from disclosure, under section 552(b)(6) of the Freedom of Information Act, 5 U.S.C. § 552.
 
 III.
 
 42
 The second request for disclosure has been the source of some confusion. We have been unable to identify the "documents" ordered disclosed. Masonic Homes' second request for disclosure was to see "(a)ny documents indicating the Region's final determination of the Petitioner's showing of interest or lack thereof." App. at 30-31. The district court ordered disclosure of "(a) any documents indicating the Fourth Region of the National Labor Relations Board's final determination of the 'showing of interest or lack thereof,' concerning a representation election by employees of plaintiff." App. at 20.
 
 
 43
 The NLRB argues in its brief that one document, NLRB Form No. 4069 a report made by a Board agent "indicating the number of employees in the bargaining unit proposed by the Union, the number of employees in the bargaining unit proposed by the Home, the number of valid authorization cards submitted by the Union, and the reasons why the agent may have rejected some cards as invalid" is covered by exemption 5, 5 U.S.C. § 552(b)(5), as well as exemption 7(A). Brief at 36. Exemption 5 excludes
 
 
 44
 inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
 
 
 45
 One danger alleged is that the Regional Director relies in part on that report in reaching his final showing-of-interest determination. This suggests that in fact the report so vigorously defended is not a document indicating the Director's final determination. The NLRB does mention this, in its final footnote, where it saysSince the report and memorandum do not in any sense constitute a "final determination" of the adequacy of the union's showing of interest, these documents, even if otherwise disclosable (sic) under the FOIA, are outside the district court's production order in this case.
 
 
 46
 Brief at 40 n. 34.
 
 
 47
 At oral argument the parties were unable to explain which documents were subject to the disclosure order.[14] Because we are unable to tell, from the record, which documents are involved, we must remand to the district court, for clarification of that part of its order.
 
 IV.
 
 48
 We will vacate the judgment of the district court. Having found that the union authorization cards are privileged under exemption 6, we will reverse that portion of the judgment ordering disclosure of the cards. We will remand the proceedings for the limited purpose of clarification by the district court of its order to disclose documents indicating a final determination of interest.
 
 
 
 [1]
 A stay was granted, however, pending disposition on appeal
 
 
 [2]
 The complete card reads
 
 
 [3]
 The district court erroneously stated that when a union claims a majority, and asks for immediate recognition, "(t)he employer would be entitled to examine the authorization cards. . . ." App. at 15. At most, unions in that position might have offered to have a neutral third party check the cards. See NLRB v. Gissel Packing Co., 395 U.S. 575, 587, 593, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)
 Cards might be shown in one instance. During a post-election unfair labor practice hearing caused by a charge that an employer had interfered with the election process, the union might introduce the cards as evidence of their majority support. See Gissel, supra.
 
 
 [4]
 We have considered whether, indeed, the cards are government records. "Records" are not defined in the Act, and there is a plausible argument that the cards are union property, merely in the temporary possession of the NLRB. However, in light of the possibility that the NLRB may have made, as a bona fide record, a list of which employees signed the cards or photostats of the cards, see NLRB Casehandling Manual, Pt. II, Representation Proceedings §§ 11030.2 and 11034, we will not base our decision on technical property distinctions
 4a Chief Judge Seitz finds it unnecessary to take a position on this conclusion because he agrees that section 6 is dispositive of this issue.
 
 
 [5]
 L'Eggs Products, Inc. v. NLRB, 93 LRRM 2488 (C.D.Cal., filed Sept. 14, 1976); Donn Products, Inc. v. NLRB, 93 LRRM 2065 (N.D.Ohio, filed Aug. 12, 1976); NLRB v. Biophysics Systems, Inc., 91 LRRM 3079 (S.D.N.Y., filed April 12, 1976)
 Just prior to filing this opinion, however, we note that a district court in the Eastern District of Louisiana has ruled that exemption 6 does not apply, on the facts like the case before us. Pacific Molasses Co. v. NLRB, Civ.No. 77-1212 (E.D.La., filed April 26, 1977) (cards not "personally embarrassing to an individual of normal sensibilities").
 
 
 [6]
 The NLRB argues that the cards may well be used in some future unfair labor practice proceeding. That is not enough. If it were, nearly all NLRB records could fit this definition
 
 
 [7]
 The House Report adds: "This would include files prepared in connection with related Government litigation and adjudicative proceedings." H.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966)
 
 
 [8]
 In Wine Hobby an amateur wine-making company wanted a list of names and addresses of those who filed with the Bureau of Alcohol, Tobacco and Firearms as home wine-makers. We held that disclosure would be a clearly unwarranted invasion of privacy, under exemption 6
 
 
 [9]
 See 11 Harv.C.R.-C.L.L.Rev. 596, 601-604 (1976) (Wine Hobby discarded any threshold test, in general the wiser approach). For a criticism, see 16 B.C.Ind. & Com.L.Rev. 240, 245, 253 (1975) (wrongly rendered "similar files" meaningless)
 
 
 [10]
 This distinguishes the case sub judice from Getman v. NLRB, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), where the court found the loss of privacy, in disclosing names and addresses of employees eligible to vote in a representation election, to be "relatively minor," id. at 675, and "very minimal," id. at 677. Also, the court considered the public benefit of a proposed study to be one of "unusual promise." Id
 
 
 [11]
 Although the exemption used, in a pending unfair labor practice setting, was exemption 7(C) which does not require the invasion to be "clearly" unwarranted, the court in Biophysics Systems, Inc., supra note 5, said disclosure of the cards "would definitely tend to 'chill' employees in the exercise of their protected rights to seek a representation election . . ." 91 LRRM at 3081
 
 
 [12]
 "If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." 29 U.S.C. § 159(c)(1) (emphasis added)
 
 
 [13]
 Using exemption 7(C), the district court in Biophysics Systems, Inc., supra note 5, also mentioned that "(t)he interest in confidentiality which attaches to a union authorization card approaches that which surrounds the secret ballot in an election." 91 LRRM at 3081
 
 
 [14]
 The NLRB said the interim document is Form 4069, entitled "Report on Investigation of Interest," and that when a final determination is made, it is a public matter anyway
 Masonic Homes said that Form 4069 is a "final" document because the employer cannot litigate it, i. e., it is "final" at a preliminary stage.
 We are not equipped to deal with this factual dispute.