Peter Hanlon IRONS, Plaintiff, Appellee,

v.

Griffin B. BELL et al., Defendants,
Appellants.

No. 78–1350.

United States Court of Appeals,
First Circuit.

Argued Dec. 5, 1978.

Decided March 27, 1979.

Patricia G. Reeves, Atty., App. Staff, Civil Division, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Edward F. Harrington, U. S. Atty., Boston, Mass., and Leonard Schaitman, Atty., App. Staff, Civil Division, Dept. of Justice, Washington, D. C., were on brief, for defendants, appellants.

Peter H. Irons, on brief, pro se.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal in a suit brought pursuant to the Freedom of Information Act (FOIA) and the Privacy Act. 5 U.S.C. §§ 552 & 552a. The government appeals from that portion of the district court's order which required the Federal Bureau of Investigation (FBI) to release to plaintiff-appellee twenty-five documents allegedly immune from disclosure under Exemption 7(D) of the FOIA. 5 U.S.C. § 552(b)(7)(D).[1] On cross motions for summary judgment, the district court ruled that the records in issue were not compiled for "law enforcement purposes" and therefore were not covered by the exemption claimed. We reverse and remand.

The turmoil of the 1960's and the response of the FBI to that unrest are at the heart of this case. Appellee was a student activist, civil rights organizer, and draft resister. He is now an attorney. In April of 1975 appellee filed a FOIA and Privacy Act request with the FBI for release of:

"All records, reports, notes, memoranda and any and all other material prepared by, received by, or otherwise in the possession of the Federal Bureau of Investigation, relating to Peter Hanlon Irons."

The FBI released the major portion of two main investigative files on appellee—one concerning his violation of the Selective Service Act and the other resulting from his application for a Presidential Pardon of that violation. The FBI's record search also revealed a number of "see" or cross refer-

---

1. The statute provides, in pertinent part:

"(b) This section does not apply to matters that are—(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the source . . . ."

ences to appellee in files resulting from investigation of various political organizations with which appellee had been associated and in so-called "control" files on such subjects as all race-related demonstrations taking place in the state of Maryland. The FBI claimed that much of this material was exempt under various provisions of FOIA. Plaintiff brought suit to compel release.

Although the FBI moved with glacial celerity throughout the proceedings and continually opposed *in camera* inspection of unclassified documents, much of the disputed material was ultimately released and appellee compromised on a number of his claims. Most of the documents allegedly exempt under 7(D) were released in expurgated form—with everything on the page, except appellee's name, blocked out. *See* 5 U.S.C. § 552(b) (reasonably segregable portions of a record must be released after deletion of exempt material). By the time the district court was prepared to rule on the cross motions for summary judgment, the FBI had narrowed its 7(D) claim to include only information that tended to reveal the identity of a confidential source. No claim was made under the provision of 7(D) relating to information obtained solely from a confidential source in the course of a criminal investigation. Appellee in turn conceded that the names of confidential sources need not be revealed. Nevertheless, appellee argued before the district court that the exemption for information tending to reveal the identity of a confidential source did not apply because the investigations involved were illegal surveillance and harassment of political organizations and activities. In response, the FBI filed an affidavit of Special Agent Nugent, purporting to set forth the law enforcement purpose underlying each of the files in which

appellee's name appeared. On the basis of the affidavit, without *in camera* inspection, the district court held that the documents represented "routine monitoring of various activities". The court clarified its intent in an order granting a stay pending appeal, stating that it was "persuaded that the files represent unfocused domestic monitoring for purposes deemed generally prophylactic and were not generated 'for law enforcement purposes' within the meaning of 5 U.S.C. § 552(b)(7)."

 We begin our review of this conclusion by sorting out the various statutory grounds urged by appellee to support the district court's holding. Specifically, appellee argued before the district court and at length before this court that the Privacy Act significantly narrows the scope of FOIA exemptions for law enforcement records. Appellee is correct that under § 552a(g), FOIA exemptions do not provide a ground to withhold material available under the Privacy Act. Moreover, under § 552a(e)(7), the kind of general monitoring of associations involved here is illegal "unless pertinent to and within the scope of an authorized law enforcement activity."[2] Nevertheless, we find that the Privacy Act adds nothing to appellee's rights under the FOIA.[3]

 First, although the Privacy Act bans the "maintenance" of general records on associations, we are not certain that Congress intended to reach files that may have been legally compiled prior to passage of the Act. Moreover, even if present "maintenance" of records concerning activities protected by the First Amendment is illegal under § 552a(e)(7), the Privacy Act does not make such illegality grounds for release.[4]

---

**2.** The section reads:

"(e) Each agency that maintains a system of records shall—
(7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."

**3.** We note in passing that the government was singularly unhelpful in dealing with appellee's Privacy Act arguments.

**4.** We need not reach the question whether appellee has stated a cause of action for illegal maintenance as a party upon whom an agency's failure to comply with the Privacy Act has had an "adverse effect". 5 U.S.C. § 552a(g)(1)(D). We read § 552a(g)(4) as providing for damages in a (g)(1)(D) suit, not dis-

Second, appellee argues at length that the legislative history of the Privacy Act makes clear that investigative records may not be exempted for longer than is necessary to commence criminal prosecution. S.Rep. No. 93–1183, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 6916, 6989. Unfortunately for appellee, the compromise version of the Act, drafted by House and Senate committee staffs and presented on the floor without committee consideration or report, eliminated the Senate's special restriction on continued exemption of law enforcement investigative records. 120 Cong.Rec. 40400–09. The plain language of the statute as enacted allows an agency to promulgate regulations exempting "investigatory material compiled for law enforcement purposes". 5 U.S.C. § 552a(k)(2). None of the additional conditions found in Exemption 7 of FOIA, such as disclosure of a confidential source, need be met before the Privacy Act exemption applies. The Department of Justice has promulgated the necessary regulations to exempt FBI records in 28 C.F.R. § 16.96 (1976). Thus, the Privacy Act adds nothing to appellee's rights under FOIA.

We turn next to the problem found by the trial court: lack of law enforcement purpose. For reasons set forth below, we hold that the failure of the Nugent affidavit to establish such a purpose was not a germane factor. But we nevertheless review the sufficiency of the affidavit because the nature of its contents affects our ultimate decision on the continued need for an *in camera* inspection. We have carefully examined the Nugent affidavit, and we agree with the trial court that if the FBI were required to establish a law enforcement purpose in order to avail itself of Exemption 7, this affidavit would be inadequate. Many of the law enforcement purposes alleged in the Nugent affidavit are little more than self-serving declarations that do not illustrate even an ephemeral possibility of enforcement of federal laws. *See Rural Housing Alliance v. United States Dep't of Agric.*, 162 U.S.App.D.C. 122, 498 F.2d 73, 82 n. 48 (1974). Such bare conclusory allegations would not suffice to establish an essential fact concerning the applicability of an FOIA exemption. *See Weissman v. Central Intelligence Agency*, 184 U.S.App.D.C. 117, 565 F.2d 692, 697 (1977); *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973); *Cowles Communications, Inc. v. Dep't of Justice*, 325 F.Supp. 726, 727 (N.D.Calif.1971).[5]

In refusing to credit the FBI's affidavit, we do not imply that the investigations involved were necessarily witch hunts. *In camera* inspection of the documents and the files in which they are contained, along with *in camera* testimony on a sealed record if necessary, *see Lesar v. Dep't of Justice*, 455 F.Supp. 921 (D.D.C.1978), might fully establish a law enforcement purpose.[6] We

closure. Appellee has sought only disclosure, and § 552a(g)(1)(B), the section dealing with suits for failure to disclose, says nothing about illegal maintenance justifying disclosure.

5. We add that this is not a case involving classified documents for which Exemption 1, 5 U.S.C. § 552(b)(1), is invoked. In such a case, "substantial weight" is given to the agent's affidavit. *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977); *Weissman v. Central Intelligence Agency, supra*, 184 U.S.App.D.C. 117, 120, 565 F.2d at 697 n. 10. No such deference applies here.

6. Indeed, assuming the relevance of lack of law enforcement purpose, the proper next step for the district court once it determined that the FBI's affidavit did not establish a law enforcement purpose was to consider, in its discretion, the need for an *in camera* inspection of some or all of the disputed documents. Such an inspection would determine whether the failure of the affidavit stemmed from mere inadvertence or from a truly overbroad reading of the exemption by the agency. If necessary, a district court may enlist the aid of a special master to test the validity of claimed exemptions by *in camera* inspection. *Vaughn v. Rosen, supra*, 484 F.2d at 828. Even though the burden of establishing the applicability of an exemption is on the agency, 5 U.S.C. § 552(a)(4)(B), we think it risky to grant summary judgment when the only competent evidence before the court is the agency's admittedly flawed affidavit. This is especially true when the question of the sufficiency of the affidavit involves a novel question of law concerning the scope of an exemption. When the legal issue of the applicability of an exemption depends upon the factual nature of the contents of a document, we think it appro-

state only that the Nugent affidavit either fails to go far enough to establish or, in some cases, seems to contradict the factual existence of a law enforcement purpose. In most cases, the affidavit reveals no more than the FBI's knowledge of the existence of an association and of its political opposition to governmental policies. In a few cases, the oblique allegation is made that "information" about the organization was received at FBI headquarters.[7] In some cases, the affidavit reveals that the FBI itself, after initial investigation, thought there was no reason to suspect an organization.[8] Yet, although the investigation was technically closed, informants continued to supply information to the file.

■ We do not accept the proposition that merely associating and expressing opposition to government policies, without more, triggers an FBI obligation to conduct a lengthy investigation and infiltration of political and religious associations.[9] The FBI's conclusory invocation of Executive Order 10450 and other internal security laws[10] does not alter this conviction. An affidavit dealing with this type of investigation should at least allege facts establishing a colorable claim of a rational nexus between the organizations and activities be-

ing investigated and violations of federal laws. The allegations relating to some of the documents in issue are sufficient to establish such a nexus. Nevertheless, we must agree with the trial court that the affidavit is insufficient as to many documents.

Those documents lacking even a colorable claim to law enforcement purpose present us with a difficult and novel issue. Although we might remand for *in camera* inspection of such documents to see if they reveal by their content the law enforcement purpose not colorably established by the affidavit,[11] we hesitate to burden trial courts with yet another ground for *in camera* review when we have serious doubts about the legal validity of such a ground. Accordingly, it is appropriate to decide whether continued failure to establish law enforcement purpose will make a legal difference—whether lack of law enforcement purpose makes Exemption 7 inapplicable.

■ A number of courts have questioned or rejected the applicability of Exemption 7 on the ground that law enforcement was not involved. In *Rural Housing Alliance v. Dep't of Agric., supra,* 498 F.2d at 81–82, the court required the agency to show that the files involved were prepared for adjudi-

priate to obtain fairly complete information about the factual question before deciding the legal issue.

7. Included in this group of organizations which, as far as we can tell from the affidavit, were investigated solely on the basis of their political views are the Institute for Policy Studies, the Student Peace Union, and the Student Public Witness.

In a similar vein, the affidavit fails to allege any facts supporting a law enforcement purpose for files on such topics as "Demonstrations Protesting United States Intervention in Vietnam" and "demonstrations pertaining to racial matters in the state of Maryland". In the case of the former, the FBI alleges an obligation to be aware of all subversive groups and individuals participating in such demonstrations on the theory that potential future government employees who associated with such demonstrations might be precluded from government employment if it turned out that the peace marches were "controlled" by "subversives". *See* Ex. Order No. 10450.

8. Such organizations included the Student Peace Union and the American Friends Service Committee.

9. *See Gibson v. Florida Legis. Inv. Comm.,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963) ("substantial connection" between organizations and alleged subversive activities required before state legislative committee may compel exposure of membership lists); *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("substantial bearing" on legitimate state interest required to justify invasion of associational rights involved in revealing names of members).

10. The laws cited by the FBI are: Internal Security Act of 1950, 50 U.S.C. § 781 *et seq.;* Foreign Agents Registration Act of 1938, 18 U.S.C. § 951; Smith Act, 18 U.S.C. § 2385; Selective Service Act, 50 U.S.C. App. § 462; Subversives Activities Control Act of 1950, 22 U.S.C. § 611 *et seq.;* 18 U.S.C. § 873–877 (extortion); and Executive Order 10450.

11. *See* note 6, *supra.*

cation or enforcement purposes. Such an "enforcement" purpose was distinguished from an agency investigation aimed at enforcing personnel policies or monitoring employee performance. The court was willing to find a law enforcement purpose, however, if the investigation was begun to determine whether or not an enforcement proceeding should be brought, irrespective of whether enforcement was ultimately attempted. In contrast, in *Committee on Masonic Homes v. N.L.R.B.*, 556 F.2d 214 (3d Cir. 1977), the court rejected the Board's attempt to invoke Exemption 7 to protect union authorization cards, even though the cards might be the basis of an election and an eventual unfair labor practice charge. The court felt that " 'law enforcement purposes' must relate to some type of formal proceeding, and one that is pending." *Id.* at 219.

Neither *Rural Homes* nor *Masonic Homes*, however, dealt with the question whether an investigation by a criminal law enforcement agency lacked law enforcement purpose because the possibility of violation was extremely remote. Rather, both *Rural Homes* and *Masonic Homes* dealt with agencies having both administrative and enforcement responsibilities whose investigations could sometimes be fairly characterized as administrative. *See also Center for National Policy Review v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974) (HEW files); *Ditlow v. Brinegar*, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974) (National Highway Traffic Safety Administration files). Perhaps the closest case on the facts is *Weissman v. Central Intelligence Agency, supra*, but we think it too is ultimately unhelpful. In *Weissman*, the CIA conducted background security checks for nonexistent positions and compiled records on a number of individuals. The District of Columbia Circuit held that the CIA could not invoke Exemption 7 because it has no

law enforcement authority, no power to conduct background security checks. The case at bar is distinguishable because the FBI has authority to conduct internal security investigations. It simply has failed to allege any plausible reason to direct those investigations at the organizations involved here. In sum, we find no guidance on the instant problem in case law.[12] At best, we glean that the requirement of a law enforcement purpose serves as a condition on Exemption 7 when an agency has both administrative and enforcement functions. We deal here with an agency whose functions are almost entirely limited to the enforcement of federal law.

The language of the statute and its context, however, do provide guidance and suggest that the rule adopted by the district court is inappropriate. First, we note that the FOIA exemptions that do not purport to require investigations or law enforcement purpose deal with types of material likely to be found anywhere within government records. For instance materials "related solely to internal personnel rules and practices of an agency" are exempt without more. 5 U.S.C. § 552(b)(2). Similarly, financial information received as confidential is exempt wherever found. 5 U.S.C. § 552(b)(4). Such material may appear in the files of countless agencies, and harm or embarrassment is likely to result from its disclosure no matter what agency compiled it.

■ Exemption 7, on the other hand, contains a long list of types of material likely to be found in the files of law enforcement agencies like the FBI, the disclosure of which would undoubtedly be harmful, especially if it was compiled by a law enforcement agency. For instance, Exemption 7(F) forestalls disclosure if the information would endanger the life or safety of

---

**12.** We add that *Weisberg v. Dep't of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (en banc), cited by the government, is also unhelpful. We read that case as holding that FBI assistance to local law enforcement investigations of the assassination of President Kennedy was authorized and therefore had a law enforcement purpose. Moreover, even if *Weisberg* addressed the issue in this case, we would hesitate to rely on its reasoning after the drafters of the 1974 amendments to FOIA expressly disapproved the case. *See* 120 Cong.Rec. 17039 (Remarks of Senators Kennedy and Hart).

law enforcement personnel. Similarly, investigative techniques and procedures are exempt under 7(E), reflecting a concern that is most legitimate when criminal law enforcement techniques are involved.

The character of the materials excluded under Exemption 7 at least suggests that "law enforcement purpose" is as much a description of the type of agency the exemption is aimed at as it is a condition on the use of the exemption by agencies having administrative as well as civil enforcement duties. We see strong policy reasons supporting this reading of "law enforcement purpose" which would, assuming other conditions are met, extend the exemption to all investigative files of a criminal law enforcement agency. First, if the unjustified nature of an FBI investigation makes Exemption 7 inapplicable, material may be released even though it "constitute[s] an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Such a result would harm innocent individuals who had no way to test the legality of an FBI investigation. Moreover, given the nature of the files involved in this case, we have little doubt that numerous unwarranted accusations that invade personal privacy would be revealed if the exemption were not available.

In a similar vein, the loss of Exemption 7 due to unwarranted FBI activity would cost the society the cooperation of those who give the FBI information under an express assurance of confidentiality. This case may not reflect the loss involved in hampering FBI operations, but this is not the usual case. Nor are we convinced that this harm to individuals and to society would be counterbalanced by a valuable increase in public information or by an effective sanction against the FBI if we were to withhold Exemption 7 from unwarranted investigations. The questionable character of FBI practices has been made public through the disclosures already made. To require further disclosure might seriously undermine the agency's ability to function without yielding a commensurate benefit in increased public knowledge. Moreover, if exposure of the fact of an unjustified investigation will not deter the agency, we doubt that disclosure of the methods and persons used in that investigation will.[13]

Finally, we think that attaching legal significance to the apparent lack of law enforcement purpose in an FBI investigation would place an unmanageable burden upon district courts. Few cases would be as obvious as this at the affidavit stage. Perhaps more important, we are hard pressed to conceive of a standard that would enable a district court to distinguish at an *in camera* proceeding between a colorably justifiable investigation that turned out to be a blind alley and an investigation that was bogus from the beginning. At best, the district court would be forced, on a record grown cold after years or decades, to second or third guess the judgment of a Special Agent in Charge that an investigation was warranted. And with such a sword of Damocles suspended, those responsible for an investigation might feel compelled to recommend frivolous prosecutions in order to shield legitimate, but unsuccessful law enforcement efforts.

We find further, and strong, support for this reading of "law enforcement purpose" in the legislative history. The 1974 amendments to Exemption 7 were a response to a number of judicial decisions that gave the law enforcement exemption an expansive scope. *See N.L.R.B. v. Robbins Tire*, 437 U.S. 214, 226, 98 S.Ct. 2311, 57 L.Ed.2d 159 (June 15, 1978); S.Conf.Rep. No. 93–1200, 93d Cong., 2d Sess., reprinted in [1974] U.S. Code Cong. & Admin.News pp. 6285, 6291; 120 Cong.Rec. 17039 (Remarks of Senator Kennedy). Congress added to Exemption 7 the requirement that the agency demonstrate that disclosure of a law enforcement

---

13. The FBI itself recognizes the need for a legislative definition of and restrictions on its surveillance activities. *See* 24 Cr.L.Rep. 2273 (BNA Dec. 27, 1978) (reporting on conference sponsored by Center for the Study of Democratic Institutions). We agree that further legislation, and not the FOIA, should define and provide sanctions for unjustified surveillance activity.

investigatory record would cause one of six specific harms deemed to be the only valid reasons for maintaining confidentiality. *See* 120 Cong.Rec. 17040 (Remarks of Senator Hart). The harm alleged here, disclosure of a confidential source, is one of those Congress sought to avoid when opening up FBI files.

Perhaps more important, Congress' focus in amending Exemption 7 was on precisely the situation involved in this case. Congress desired to expose the overreaching of the FBI and other federal law enforcement agencies. *See* 120 Cong.Rec. 17038 & 17040 (Remarks of Senator Weicker). In response to opposition from other legislators and from President Ford (who ultimately vetoed the bill), the drafters stated their intention to expose illegal and unjustified activity without encroaching upon any legitimate reasons for confidentiality. The second part of Exemption 7(D), allowing nondisclosure of confidential *information* as well as the identity of its source in a criminal law enforcement investigation was drafted specifically to protect the FBI. *See* S.Conf.Rep.No. 93–1200, *supra*, at 6291.[14] In a tactic which puzzles us, the FBI has not invoked the .second part of Exemption 7, but rather the first clause aimed at all enforcement, both civil and criminal. Nevertheless, we find in the special willingness to protect FBI confidentiality a strong indication that Congress did not intend even unwarranted FBI investigations to fall outside Exemption 7.

We are further persuaded that Congress intended Exemption 7 to apply in the instant situation by the fact that throughout the debates on the issue, Exemption 7 records were referred to as "investigatory records of the FBI." *See, e. g.,* 120 Cong.Rec. 17034 (Remarks of Senator Kennedy), 36878 (Remarks of Senator Bayh), 36879 (Remarks of Senator Mondale). We read these references as indicating an intent that the investigatory records of law enforcement agencies are inherently records compiled for "law enforcement purposes" within the meaning of Exemption 7. Finally, we note that the drafter of the amendment, Senator Hart, stated that "the amendment protects without exception and without limitation the identity of informers. It protects both the identity of informers and information which may reasonably be found to lead to such disclosure. These may be paid informers or simply concerned citizens who give information to enforcement agencies and desire their identity to be kept confidential." 120 Cong.Rec. 17034.

We cannot believe that an amendment designed to reveal unjustified domestic surveillance while protecting those who spoke in confidence was intended to breach confidences when the surveillance involved was so lacking in justification as to belie the description "law enforcement". Even without disclosing the identity of confidential sources, appellee's FOIA request has had exactly the effect envisioned by Congress; questionable practices by the FBI have been brought to light. We do not think more disclosure is required.

Our decision resolving conflicting policies within the FOIA does not, of course, affect other avenues that may be available to deal with unwarranted investigation or official law breaking. The FOIA involves dissemination of information, as a matter of right, to all members of the public at large. Specific members of the public injured by official law breaking or with a specific interest in investigatory records may have specific rights not available to the general public.[15]

14. *See also* Freedom of Information Act & Amendments of 1974 (P.L. No. 93–502) Source Book: Legislative History, Texts, and Other Documents, Joint Committee Print, 94th Cong., 1st Sess., 368–72 (letters exchanged between Senator Kennedy and President Ford), 379–82 (letters exchanged between Congressman Moorehead and President Ford), 398–99 (President's veto message expressing concern over burden on agency of proving exemption but not over revised substantive scope of exemption) (1975).

15. For instance, FOIA exemptions have nothing to do with the right of public officials to obtain records in an effort to prosecute official law breakers. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Similarly, a criminal defendant or even a civil litigant may have rights of access not available to the general public under FOIA. *See Social-*

Such rights do not stem from, and are not limited by, the balancing of policies we undertake today concerning the general public's right of access.

In sum, the purpose of the 1974 amendments can be fulfilled without withdrawing Exemption 7 protection from FBI files. Indeed, it would defeat the purpose of the Hart amendment to reveal private information and confidential sources. Thus, we hold that when the flaw in the law enforcement purpose of an FBI investigative record, allegedly compiled with a view toward enforcement of internal security laws, is the total lack of any likelihood of enforcement, the record is nevertheless "compiled for law enforcement purposes" and Exemption 7 will apply to protect confidential sources.

█ Although we must reverse the ground upon which appellee prevailed below, we cannot say that this case is finished. The trial court has not yet ruled on appellee's challenge to the FBI's claim that the twenty-five documents would tend to reveal the identity of a confidential source. The trial court has not exercised its discretion to decide whether or not to conduct an *in camera* inspection to determine if the exemption was properly claimed. We think it especially important in this case that the trial court have an opportunity to consider the need for an *in camera* inspection, because at least one fact strongly supports such an inspection. Where available facts tend to show the existence of the very overreaching Congress intended to expose by amending Exemption 7, a court should use special caution to insure that the limited exemptions from exposure are not used to defeat Congressional purpose. We therefore remand to the district court to consider, in its discretion, the need for an *in camera* review to determine if Exemption 7(D) was properly invoked.[16]

*Vacated and remanded for further proceedings consistent with this opinion.*

ists *Workers Party v. Attorney General*, 458 F.Supp. 895 (S.D.N.Y.1978).

**16.** We note that the government has withdrawn any objection to *in camera* inspection.

We read this invitation as waiving any argument that the FBI affidavits describing the content of the documents are sufficient to establish the applicability of the exemption.