**Carl L. STERN, Plaintiff,**

**v.**

**Elliot L. RICHARDSON, Attorney General of the United States, Defendant.**

**Civ. A. No. 179–73.**

United States District Court,
District of Columbia.

Sept. 25, 1973.

---

Ronald L. Plesser, Washington, D.C., for plaintiff.

Michael A. Katz, Asst. U. S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

PARKER, District Judge.

This is an action under the Freedom of Information Act (Act), 5 U.S.C. § 552. The plaintiff, a professional broadcast journalist, has sued the Attorney General of the United States and

seeks equitable relief in the form of compelled disclosure of several documents relating to a program instituted by a bureau of the Department of Justice, the Federal Bureau of Investigation (FBI). The documents relate to a counter-intelligence program of the FBI entitled "Cointelpro-New Left" (Cointelpro).

 Specifically requested by the plaintiff were any documents which (a) authorized the establishment and maintenance of the Cointelpro program; (b) terminated such program; and (c) ordered or authorized any change in the purpose, nature or scope of the program.[1] The Justice Department admitted to the existence of such a program[2] but refused to release the material. The Court, following the recommended procedure, conducted an inspection of the requested documents *in camera*.[3] See e.g. Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971); Bristol-Myers v. F. T.C., 138 U.S.App.D.C. 22, 424 F.2d 935 (1970).

The government moved the Court for an order, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, dismissing the complaint, or, in the alternative, to grant summary judgment in its favor pursuant to Rule 56. The plaintiff cross moved for summary judgment.

Defendant resists disclosure of the requested documents and relies upon the exemptions to disclosure found within §§ 552(b)(2), (b)(5) and (b)(7) of the Act. The (b)(2) exemption provides that material "related solely to the internal personnel rules and practices of an

---

1. Plaintiff satisfactorily complied with the administrative prerequisites of the Act having formally requested and been denied disclosure.

2. Complaint For Injunctive Relief, ¶ 5, admitted by defendant in Answer, ¶ 5.

3. The government urged the Court to refrain from an *in camera* inspection pending a decision by the Court of Appeals in Weisberg v. U. S. Department of Justice, 160 U.S.App. D.C. ——, 489 F.2d 1195, recently re-argued *en banc*. One of the arguments presented to the full court was that the original appellate ruling improperly ordered the lower court to conduct an *in camera* review of the spectrographic analyses compiled by the FBI, and maintained in their files, in connection with their investigation of the assassination of President Kennedy. The government's position, as gleaned from their petition for rehearing *en banc*, is that the seventh exception to mandatory disclosure under the Act, relating to agency "investigatory files compiled for law enforcement purposes," represents a blanket exemption and as such, despite the Act's requirement that the district court made a *de novo* review of the questioned material to determine whether or not the agency is justified in refusing disclosure, *in camera* inspection is unwarranted and inappropriate. Reliance is principally placed upon the recent Supreme Court ruling in Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) wherein it was held that under the Act's first exemption, 5 U.S.C. § 552(b)(1) covering matters "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy," there was no room for *in camera* inspection once the Executive has ordered that documents be kept secret. The Court, however, which considered the Act in the context of material relating to, the advisability of nuclear testing, did not categorically reject *in camera* inspection as the proper practice where exemption 5 [inter or intra agency memoranda] is claimed to be applicable. Indeed, the Court plainly indicated that *in camera* review was the advisable course when the government has initially failed to meet its burden, as it must under subsection (a)(3) of Section 552. This Court does not read *Mink* as automatically precluding an *in camera* analysis of material allegedly immune from disclosure under exemptions other than (b)(1). Although the *en banc* ruling in *Weisberg* may resolve any such question, in view of the expeditious treatment these cases are statutorily entitled to, this Court decided against holding in abeyance, pending a *Weisberg* ruling, a resolution of the motion for an *in camera* inspection.

Nor has the government satisfied this Court, by means of affidavit or otherwise, that the documents clearly fall within any of the three exemptions relied upon by the government. The nature of the material is in obvious dispute, necessitating the *in camera* inspection. See Vaughn v. Rosen, 157 U.S. App.D.C. 340, 344, 484 F.2d 820, at 824 n. 16.

agency" need not be disclosed; subsection (b)(5) exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"; and (b)(7) is addressed to "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

Having reviewed the *in camera* submissions, and upon consideration of the pleadings and memoranda filed, the Court finds that the documents to which access is sought fall outside the protection of the above exemptions and, therefore, are not immune from disclosure. Accordingly, the Court denies the defendant's motions and grants and enters summary judgment in favor of the plaintiff.

 The Court notes preliminarily that the Act is clear in its requirement that the reviewing court make a *de novo* determination, and that the withholding agency is encumbered with the burden of justifying its refusal to disclose the requested material. 5 U.S.C. § 552(a)(3). Furthermore, the case law makes it abundantly clear that the policy underlying in all respects favors disclosure. "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling hands." Environmental Protection Agency v. Mink, *supra* at 80, of 410 U.

S., at 832 of 93 S.Ct. See e.g. Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 672 (1971); Bristol-Myers v. F.T.C., *supra*. As Chief Judge Bazelon has counseled:

> "The touchstone of any proceedings under the Act must be the clear legislative intent to assure public access to all governmental records whose disclosure would not significantly harm specific governmental interest. The policy of the Act requires that the disclosure requirement be construed broadly, the exemptions narrowly." Soucie v. David, *supra* at 1080, of 448 F.2d.[4]

The strength of the government's defense[5] rests upon an affidavit executed by Special Agent James L. Williamson of the FBI, in which he concluded that the documents fall within the three previously mentioned exemptions and that disclosure of their contents would deleteriously affect the effective functioning of the Bureau. The Court need not and, after examining the material, does not accept those conclusions.

### The (b)(2) Exemption:

> Matters . . . related solely to the internal personnel rules and practices of an agency

The government contends that the requested material includes instructions related to Bureau investigative operation and as such represents internal procedures, the disclosure of which would thereafter seriously threaten "the effectiveness of the operation of the FBI . . . to the detriment of the efficient operation of the organization."[6] A most thorough and helpful analysis of this ex-

---

4. The Court there held that, save exceptional circumstances, the reviewing court is precluded from denying access based upon general equitable considerations. The government can meet its burden only by establishing that a statutorily created exemption is applicable. Deference to administrative findings is rejected by the Act's mandate for a *de novo* trial at the District Court level. "It could not be more clear, therefore, that Congress sought to make certain that the ordinary principle of judicial deference to agency discretion was discarded under this Act." Environmental Protection Agency v.

Mink, concurring opinion of Justice Brennan, 410 U.S. at 104, 93 S.Ct. at 844.

5. As is common in many Freedom of Information Act matters, the plaintiff has not offered any proof substantiating his position. Since plaintiff has been denied access, it is almost impossible to make a meaningful characterization of the material sought, thus leaving him to argue general principles. Vaughn v. Rosen, *supra* at 823 of 484 F.2d.

6. Affidavit of James L. Williamson, Special Agent, Federal Bureau of Investigation, sworn to on May 10, 1973, ¶ 4.

emption is contained in Hawkes v. Internal Revenue Service, 467 F.2d 787 (6th Cir. 1972), in which the (b)(2) exception to the Act was narrowly defined and limited. The Court noted the wide discrepancy between the House and Senate interpretations of the exceptions, as evidenced in their respective Reports.[7] The *Hawkes* Court adopted the Senate version, confining the exception to "employee-employer type concerns upon which the Senate Report focused." [8] This rationale was subsequently adopted in Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973) and, as the citations included in that opinion indicate, has carried the weight of authority. At 703.[9]

The Court's *in camera* review and inspection leave little, if any, doubt that the communications here involved have nothing whatsoever to do with the internal personnel rules and practices of an agency as that exception has been interpreted. Exemption (b)(2), therefore is of no comfort to and affords defendant no basis to withhold the questioned material.

### The (b)(5) Exemption:

Inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency

The *Mink* Court provides the most authoritative treatment of this exemption, and does so principally by way of reference to the legislative history surrounding this subsection:

"It was pointed out in the comments of many of the agencies that it would be impossible to have any frank dis-

cussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.' The committee is convinced of the merits of this general proposition, but it has attempted to delimit the exception as narrowly as consistent with efficient Government operation." S.Rep.No. 813 p. 9 as reprinted in 410 U.S. at 87, 93 S.Ct. at 836.

The Court of Appeals for this Circuit has similarly ruled, in a case relied on by both litigants, that:

"The basis of Exemption (5), as of the privilege which antedated it, is the free and uninhibited exchange and communication of opinions, ideas, and points of view—a process as essential to the wise functioning of a big government as it is to any organized human effort." Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336, 1341 (1969).

This exemption "has been held to protect internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports." Soucie v. David, *supra* at 1077 of 448 F.2d.

Contrary to the assertions of the FBI Special Agent, the documents in question do not constitute such communications.[10] Nor do they appear to be part of a deliberative policy-making process or reflect the candid advice or opinions contemplated under a (b)(5) exemption.

7. Sen.Rep.No.813, 89th Cong. 1st Sess. (1965); H.R.Rep.No.1497, 89th Cong. (2d Sess.), 1966 U.S.Code Cong. & Admin.News, p. 2418.

8. 467 F.2d at 797.

9. The House position was that (b)(2) would immunize "(o)perating rules, guidelines, and manuals of procedure for Government investigators or examiners . . . ." H.R.Rep. at 10, 1966 U.S.Code Cong. & Ad-

min.News, p. 2427 as reproduced at 467 F.2d at 796. The favored Senate view, on the other hand, construed this exemption as applicable to matters such as the regulation of parking facilities, lunch hours, etc. S.Rep. at 8. See also Davis, The Information Act; A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 786 (1967) in which Professor Davis, before *Hawkes*, drew the same conclusion.

10. Williamson affidavit, ¶ 5.

*The (b)(7) Exemption:*

Investigatory files complied for law enforcement purposes except to the extent available by law to a party other than an agency

The government maintains that since these documents are contained in an "investigatory file" disclosure is not mandated.[11] This self-serving characterization, however, is not dispositive of the issue and does not satisfy the Court. Citing the House Committee Report, our Court of Appeals observed in *Bristol-Myers* that a major purpose of the (b)(7) exemption is to prevent a party from gaining indirectly "any earlier or greater access to investigatory files than he would have directly [in such litigation or proceeding,]" and in that context held that nondisclosure may only be justified if "the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files . . . ." 424 F.2d at 939. The Senate Committee Report viewed this exemption as necessary to prevent the Government's case in Court from being weakened.[12]

The government has not demonstrated that the requested documents, which are couched in broad generalities, relate to any ongoing investigation or that disclosure would jeopardize any future law enforcement proceedings. The name alone suggests the purpose of the program as being one of counter-intelligence. Indeed, the documents themselves nowhere indicate any relationship between Cointelpro and law enforcement proceedings.

The *Hawkes* court explained, and this Court agrees, that "law enforcement is the process by which a society secures compliance with its duly adopted rules. Enforcement is adversely affected *only* when information is made available which allows persons simultaneously to violate the law and to avoid detection." 467 F.2d at 795. (Emphasis in original).

Plaintiffs request is restricted to directives of the FBI which established Cointelpro and described its purpose and scope. The information sought does not relate to detailed investigatory activities of the FBI, the public disclosure of which, assuming law enforcement proceedings were contemplated, would afford a potential criminal the opportunity to "violate law and to avoid detection."

The Court concludes that the government has not carried its statutory burden of establishing that the information is covered by the seventh exemption.

---

11. Williamson affidavit, ¶ 6.

12. Sen.Rep.No.813, 89th Cong. 1st Sess. at 9.