**Alan RAMO, Plaintiff,**

v.

**DEPARTMENT OF the NAVY and Department of Justice, Defendants.**

**No. C–76–840.**

United States District Court, N. D. California.

June 13, 1979 and Sept. 21, 1979.

Lynn H. Pasahow, McCutchen, Doyle, Brown & Enersen, Margaret C. Crosby, ACLU Foundations of Northern California, San Francisco, Cal., for plaintiff.

Daniel J. Metcalfe, Asst. Atty. Gen., Civil Division, Dept. of Justice, Nicki L. Koutsis, Dept. of Justice, Washington, D.C., David E. Golay, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

WOLLENBERG, District Judge.

Plaintiff Alan Ramo brought this action in April, 1976, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, to obtain access to records about him kept by two government agencies, the Federal Bureau of Investigation (FBI) and the Naval Intelligence Service (NIS). These two agencies claim to have investigated him on matters of internal and military security; plaintiff characterizes these actions as general surveillance operations. Plaintiff requests that the Court order the release of the material excised from the

records that have thus far been disclosed and that the FBI conduct a further search of its records for material pertaining to him.

This case has undergone a rather protracted procedural struggle. The agencies originally released a limited number of documents replete with various excisions. During the first two years after the commencement of the action, the agencies uncovered more documents which they released with some of the previously excised material. The agencies also submitted the unexpurgated records for *in camera* review. The parties have offered and then withdrawn several motions for summary judgment. The Court has denied two of the defendants' such motions requesting in one instance that the agencies provide more specific facts concerning several key issues. Finally, the Court held a hearing at which the defendants' central affiants offered testimony that amplified and clarified their previous statements. This memorandum opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The agencies have disclosed the vast bulk of the material pertaining to plaintiff that they have found in their records. The expurgated records wholly reveal the nature and scope of the investigations of plaintiff. Almost all of the excised portions involve names of third parties or material that might reveal the identity of those parties. In support of the nondisclosure of this material, the agencies have invoked section 552(b)(7)(C) and (D).[1] These provisions exempt from the statute's disclosure requirements investigatory records compiled for law enforcement purposes that would constitute an unwarranted invasion of personal privacy and that would disclose the identity of a confidential source. Plaintiff has raised numerous legal arguments in support of his contention that defendants have improperly relied upon these exemptions.

---

1. The agencies have also excised a limited amount of other material under section 552(b)(1), (b)(2), see section 6 *infra*, and (b)(7)(E), see section 5 *infra*.

### 1. Sufficiency of the Affidavits.

As a preliminary matter, plaintiff attacks defendants' primary affidavits on the basis of their hearsay content and the claim that they are not based on sufficient personal knowledge. On this ground, plaintiff alleges that the Court must find that defendants have failed to meet their burden of proof sustaining their refusal to disclose. *See Harvey's Wagon Wheel, Inc. v. N.L.R.B.,* 550 F.2d 1139, 1141–42 (9th Cir. 1976).

■ This position is without merit. Plaintiff cannot reasonably contend that the Government must locate and produce statements from the originator of each piece of information excised from a disclosed record. Such a strict application of the rules of evidence would cost the Government untold time and resources and would yield negligible benefits. In FOIA cases, the Government must submit "detailed affidavits or oral testimony" that provide the trial court with sufficient information to make its own assessment of the basis for the excisions; conclusory allegations of exemption will not suffice. *See Harvey's Wagon Wheel, Inc. v. N.L.R.B.,* 550 F.2d at 1142. The affidavit or testimony of an agency official, who is knowledgeable in the way such information is normally gathered, that attests in a detailed manner as to the basis of each claimed exemption complies with this standard. The defendants' affidavits meet this test.

### 2. Law Enforcement Purpose.

The most hotly contested question in this case concerns the agencies' purposes for collecting the records in question. In order to invoke any of section 552(b)(7)'s enumerated grounds for exemption, the statutory language appears to require that the agency establish as a threshold matter that the requested material consist of "investigatory records compiled for law enforcement purposes." The parties have raised both legal and factual questions pertaining to the application of this requirement.

Plaintiff contends that to qualify material as an investigatory record compiled for law enforcement purposes, an agency must show that it had the authority to conduct such an investigation and that it acted upon a *specific adjudicatory or enforcement* purpose at the time that it compiled the records. He argues that because the NIS investigation exceeded the scope of that agency's investigatory powers and had no specific enforcement purpose, it cannot have had a legitimate law enforcement purpose. The FBI lacked such a purpose, plaintiff argues, because that agency did not suspect him of violating any specific law but only investigated him in the interests of "general surveillance."

■ Insofar as the NIS investigation is concerned, the Court acknowledges that if the agency acted outside the scope of its investigatory powers it would be precluded from showing that it acted with a law enforcement purpose. *See Weissman v. Central Intelligence Agency,* 565 F.2d 692 (D.C. Cir.1977) (holding that the CIA could not invoke exemption 7 because it lacked any law enforcement authority to conduct security checks for nonexistent employment positions). On the basis of its *in camera* review of the records and the affidavit of Peter Reilly, Special Agent of the NIS who had general supervisory powers over this investigation, the Court finds, however, that the NIS did have the authority to investigate plaintiff and his associates. The evidence supports the agency's contention that the investigation of these civilians was incidental to efforts to determine the extent of the participation of military personnel in illegal activities designed to impair the morale, loyalty and discipline of other such personnel. This action comes within the NIS's authorized powers and has a sufficient enforcement purpose to meet the threshold requirement of section 552(b)(7).

The plaintiff's contentions regarding the FBI's investigation raise a difficult question concerning how a court is to determine whether that agency acted with a legitimate law enforcement purpose. The case law in this area is inconclusive. Plaintiff would apply the standard employed by cer-

tain courts in FOIA cases in which the question has been raised as to whether government agencies serving the dual function of administration and enforcement have properly invoked the exemption. These courts have required that the agencies must show that they compiled the records for specific adjudicative or enforcement purposes, *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 80 (D.C.Cir. 1974), or when such proceedings were actually pending. *Committee on Masonic Homes v. N.L.R.B.*, 556 F.2d 214, 219 (3rd Cir. 1977).

There exists, however, several grounds upon which to distinguish the investigative records of the FBI from those of other government agencies. As suggested by Judge Coffin in *Irons v. Bell*, 596 F.2d 468 (1st Cir., 1979), other government agencies often conduct investigations for administrative purposes while the FBI is primarily concerned with law enforcement. Therefore, applying a more stringent test to the investigatory records of those agencies could be required in order to ensure that the agencies do not use the exemption to shield administrative files. In the Congressional debates over the amendment of exemption 7 in 1974, the speakers both in support and opposition often distinguished the investigatory files of the FBI from the files of other agencies. *See, e. g.*, 120 Cong. Rec. 17034 (1974) (remarks of Sen. Kennedy), 36768 (remarks of Sen. Bayh). Their comments suggest Congressional endorsement of special FOIA treatment of FBI investigatory files in order to avoid impeding general criminal investigations. Finally, given the nature of the activity that the FBI investigates, that agency, as compared with other agencies, has a heightened concern for investigating violations at their incipient stages. Thus circumstances may require that the FBI commence an investi-

gation before any specific violation has occurred.

**[4, 5]** These types of considerations, its view of the legislative history of the 1974 amendments, and its desire to protect the district court from an "unmanageable burden" led the First Circuit in *Irons v. Bell* to decide that the FBI need not show that its records are investigative files compiled for law enforcement purposes when the agency invokes exemption 7. This Court accepts the reasoning of *Irons* but questions whether the problem raised requires wholly excepting the FBI from meeting exemption 7's threshold requirement. In cases where the FBI has patently acted without a law enforcement purpose, such as in *Stern v. Richardson*, 367 F.Supp. 1316 (D.D.C.1973), in which the "investigatory files" concerned an FBI counter-intelligence program, this Court does not believe that Congress intended that exemption 7 should shield in any way the agency from the FOIA disclosure rules.[2] This Court adopts a liberal test that would require that the FBI show a sufficient connection between the conduct of the investigation and legitimate concerns for maintaining national security or preventing criminal activity. This approach accords special treatment to FBI investigatory files without granting the agency too much deference. To invoke the exemption, the agency need not show that the files reflect a specific suspected violation of the law; however, it must show that the investigation was based on some legitimate law enforcement purpose.

■ Applying this test to the facts at hand, the Court finds that the FBI had a law enforcement purpose when it investigated plaintiff. As Agent James King testified,[3] plaintiff's associations with a violence-prone individual and a revolutionary political organization led the FBI to investigate him in furtherance of national security

---

**2.** The fact that Senator Kennedy referred to *Stern* during the debates as the type of case in which the public had the right to full disclosure, 120 Cong.Rec. 36866–67, lends support to the Court's position that Congress never implicitly intended to except the FBI from meeting this requirement.

**3.** The Court found Agent King to be a credible witness. His testimony clarified any conflicts found in his different affidavits.

interests.[4] The Court's finding neither condones nor condemns the investigatory activity involved herein; plaintiff's reliance on the FOIA permits the record to speak for itself.

### 3. Exemption (b)(7)(C).

█ Both the FBI and the NIS have invoked exemption (7)(C) in support of their excision from the disclosed materials of the names of various third parties and of the FBI agents involved in the pertinent investigations. This exemption permits the deletion of these names and of related identifying information when disclosure would "constitute an unwarranted invasion of personal privacy." The availability of this exemption depends upon the court's balance of the public and private interests in disclosure as compared with nondisclosure; that is, the court must assess the severity of the invasion of privacy that disclosure would cause against the public's interest in disclosure. See Department of Air Force v. Rose, 425 U.S. 352, 372–73, 96 S.Ct. 1592, 1604–1605, 48 L.Ed.2d 11 (1976); Tarnopol v. F.B.I., 442 F.Supp. 5, 7 (D.D.C.1977).

█ Plaintiff has failed to identify any public interest that would support disclosure of the excised names of third parties and related identifying information. On the other hand, a possible harm to personal reputation could arise from public disclosure of an individual's connection with a law enforcement investigation. See Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Lesar v. United States Department of Justice, 455 F.Supp. 921, 925 (D.D.C. 1978); Tarnopol v. F.B.I., 442 F.Supp. at 7. Thus, the Court holds that the agencies have properly withheld this information.[5]

4. The Court notes the remarks of a leading sponsor of the 1974 amendments on the subject of the interplay of the FOIA and national security investigations:

Furthermore, it seems to me that the amendment itself has considerable sensitivity built in to protect . . . the legitimate interests of a law enforcement agency to conduct an investigation into any one of those crimes

Disclosure of the names of the FBI agents raises a more difficult legal question. A reasonable argument can be made that Congress did not intend that exemption (7)(C) should apply to agents' names since exemption (7)(F) specifically provides a limited exception for law enforcement personnel in instances when disclosure would endanger their personal safety. See generally, Maroscia v. Levi, 569 F.2d at 1002; Providence Journal Co. v. F.B.I., 460 F.Supp. 778, 792 (D.R.I.1978). However, when confronted with this particular exemption claim, courts have uniformly approved the use of (7)(C) to shield the names of FBI agents. See Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978); Lesar v. United States Department of Justice, 455 F.Supp. at 925; Ferguson v. Kelly, 455 F.Supp. 324, 327 (N.D.Ill.1978) (reversing its previous decision to reveal those names); Tarnopol v. F.B.I., 442 F.Supp. at 7.

█ These decisions rest upon the sound determination that agents have at least a minimal privacy interest in avoiding harassment and annoyance in their employment and private lives while the public lacks any significant interest in disclosure. Plaintiff argues that release of the names would serve the public's interest in rendering the agents accountable for their actions in furtherance of the purposes of the FOIA. Yet making the FBI accountable for its actions would appear to meet the purposes of the FOIA. In addition, the authors of the amendments of the exemptions made crystal clear their intent to avoid creating any impediments to legitimate law enforcement, see 120 Cong.Rec. 17033–40, 36866–71 (1974); harassment of the agents could create such problems. Finally, the records fail to reveal any illegal activity for which the individual agents could be held accountable.

. . .—treason, espionage, or what have you.
120 Cong.Rec. 17040 (remarks of Sen. Kennedy).

5. The fact that in a few instances the agencies may have inadvertently released such names does not justify any further disclosure that would compound the invasion of privacy that has already occurred.

Thus, the agents' privacy interest outweighs any identified public interest. The Court sustains the withholding of these names.

#### 4. Exemption (b)(7)(D).

■ Both the FBI and the NIS have invoked exemption (b)(7)(D) in order to justify their refusal to disclose the names of persons and agencies that allegedly served as confidential sources. The rule governing the applicability of this exemption requires that the agency establish that the confidential sources provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. *See* Conference Report No. 93–1200, 93d Cong.2d Sess. 13 (1974), *reprinted* in 1974 U.S.Code Cong. & Admin.News, pp. 6285, 6291; *Mobil Oil Corp. v. F.T.C.*, 430 F.Supp. 849, 851 (S.D.N.Y.1977).

The FBI and the NIS have submitted evidence supporting their position. Special Agent King testified that based on his knowledge and experience as an FBI agent, the use of code names and symbol numbers as a substitute for the name of a source, and the use of the word "source" to describe a provider of information indicated that the agency had made an assurance of confidentiality. William O'Riley, special agent of the NIS, similarly stated in his affidavit that the use of symbol numbers in the instant case indicated that his agency had offered such assurances. A review of the records, however, does show that some of these sources were identified by name.

■ Plaintiff contends that the agencies must offer more specific facts showing the particular assurances of confidentiality. The Court rejects this position for a number of reasons. First, even the case upon which plaintiff relies does not require the submission of affidavits pertaining to each invoca-

tion of exemption (7)(D). *Mobil Oil* only states that the agency must file:

a responsive affidavit from a responsible person in the agency stating with specificity the basis for its belief that disclosure of identifying details is not required by virtue of exemption (7)(D).

430 F.Supp. at 852.[6] Second, based upon its review of the records, the Court notes the reasonableness of inferring from the circumstances of these law enforcement investigations that the sources would expect that their identity would remain confidential. Law enforcement agencies constantly rely upon sources who only cooperate subject to an assurance of confidentiality. Senator Hart, the author of the 1974 amendments, spoke to this point during the Congressional debates: "[A]ll the F.B.I. has to do is state that the information was provided by a confidential source and it is exempt." 120 Cong.Rec. 36871. Finally, plaintiff can articulate no significant interest in the disclosure of this information.

■ All of these factors bolster the agencies' affidavits and suggest the propriety of the application of exemption (7)(D) to this material. Thus the Court finds that the agencies have properly withheld this material.[7]

#### 5. Exemption (b)(7)(E).

■ Plaintiff has stipulated that he would not object to the withholding of material pursuant to exemption (b)(7)(E) subject to the Court's confirmation of the fact that these portions of the documents refer to lawful investigative techniques and procedures. The Court attests to the apparent lawfulness of those procedures.

#### 6. Exemption (b)(2).

■ Exemption (b)(2) permits the nondisclosure of matter "related solely to the internal personnel rules and practices of an

---

**6.** In *Mobil Oil*, the court sustained some of the exemption claims despite the absence of any supporting affidavits.

**7.** The Court rejects plaintiff's contention that exemption (7)(D) only applies to persons on the basis of the discussion in *Church of Scientolo-*

*gy v. United States Department of Justice*, 410 F.Supp. 1297, 1302–03 (C.D.Cal.1976). While disclosure of this type of information would not significantly benefit the plaintiff, it could impede law enforcement investigations.

agency." Informant symbol numbers and code names are precisely the type of material with which this exemption is concerned since their release would not advance any public interest, *see Department of Air Force v. Rose*, 425 U.S. at 364, 96 S.Ct. at 1600, and could harm government interests. *See Lesar v. United States Department of Justice*, 455 F.Supp. at 925. The Court upholds the use of this exemption.

### 7. Scope of the FBI Search.

In responding to plaintiff's documents request, the FBI admittedly did not process all of its records that referred to plaintiff. The agency reviewed the main files indexed in plaintiff's name but did not process any of the "see references" that referred to other files which contained references to plaintiff. Transcript at 33. The "see references" indicated a specific document in a specific file that could be located by requesting the file and finding the document. Transcript at 38. Plaintiff has requested that the agency process and release these records.

Courts have utilized a reasonableness standard in determining whether a government agency has conducted an adequate search of its records. *See Marks v. United States Department of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). Agent King testified that the agency did not process the "see references" because this task would not necessarily produce releaseable documents and would considerably tax the overburdened staff working on the FOIA requests. Transcript at 35. He stated that the processors would have trouble identifying plaintiff as the subject of the documents and that plaintiff could have aided this task had he furnished the agency with information, as requested, concerning any other investigations in which he might have been involved. The agency failed, however, to offer any specific evidence detailing the burdensomeness of this process or how it would have used the requested information.

 The agency must carry the burden of proof necessary to establish the unreasonableness of plaintiff's request. *See*

*Marks v. United States Department of Justice*, 578 F.2d at 262. Given the fact that the "see references" indicated the specific document in the specific file that referred to plaintiff, the Court questions *on the basis of the evidence presented to it* the actual burdensomeness of this task. In at least one other case, the agency has voluntarily produced the "see reference" documents. *See Irons v. Levi*, 451 F.Supp. 751, 753 (D.Mass.1978), *reversed on other grounds, Irons v. Bell*, 596 F.2d 468 (1st Cir., 1979). Since the agency has failed to meet its burden of proof on this subject, the Court orders that it process and release to plaintiff the nonexempt portions of the "see reference" documents in accordance with the findings in the previous discussion.

ACCORDINGLY, IT IS HEREBY ORDERED, for the reasons stated herein, that the defendants need not disclose the materials that they have excised from the documents that they have released to the plaintiff and that defendant FBI process and release to plaintiff the nonexempt portions of the pertinent "see reference" documents found in their files.

### ORDER GRANTING DEFENDANT DEPARTMENT OF JUSTICE'S MOTION FOR PARTIAL RECONSIDERATION

Upon consideration of defendant Department of Justice's motion for partial reconsideration of that portion of the Court's Memorandum Opinion and Judgment of June 13, 1979, pertaining to FBI "see reference" documents, and of all papers filed by the parties with respect thereto, and the Court having directed plaintiff, upon initial hearing of this motion on August 17, 1979, to file a supplemental administrative request for such documents in accordance with the FBI's "see reference" policy, and plaintiff having advised the Court that defendant complied with this request, and it appearing to the Court that the formal granting of the motion, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, would now be just and proper;

IT IS HEREBY ORDERED that defendant Department of Justice's motion for partial reconsideration be GRANTED.

IT IS FURTHER ORDERED that the Court's Memorandum Opinion and Judgment of June 13, 1979, are hereby VACATED IN PART, with respect to the issue of "see reference" documents.