Lester Ben BINION, Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF JUSTICE; William F. Smith, Attorney General; Edward C. Schults, Deputy Attorney General; David C. Stephenson, Acting Pardon Attorney; Raymond P. Theim, Attorney-Advisor; Rudolph W. Giuliani, Associate Attorney General; Quinlan J. Shea, Jr., Director, Office of Privacy and Information Appeals, Defendants-Appellants.

No. 82–5316.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1982.

Decided Jan. 6, 1983.

William G. Cole, Atty., Washington, D.C., for defendants-appellants.

Ronald Plesser, Blum & Nash, Washington, D.C., for plaintiff-appellee.

Before WRIGHT, ANDERSON, and CANBY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The Department of Justice appeals from an order mandating the disclosure of materials, requested under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, *id.* § 552a, about plaintiff's application for a presidential pardon.

This appeal presents us with two issues of first impression:

(1) Does the Privacy Act exemption for a criminal law enforcement agency's system of specified records cover the Pardon Attorney's deliberative documents created after completion of the pardon applicant's sentence?

(2) Does the FOIA exemption for "investigatory records compiled for law enforcement purposes" cover FBI records collected solely for a pardon investigation?

The lower court answered both questions in the negative. We reverse.

## I. FACTS

The plaintiff, Lester Ben Binion, was convicted of a federal tax offense over 25 years ago. He completed all obligations connected with that conviction on November 28, 1966. During and after his probation he made applications for a presidential pardon.

The Constitution confers on the President "power to grant reprieves and pardons for offenses against the United States." U.S. Const. Art. II, § 2, cl. 1. A presidential pardon is an act of grace. The applicant has no due process rights in the process. "Seldom, if ever, has this power of executive clemency been subjected to review by the courts." *Solesbee v. Balkcom,* 339 U.S. 9, 12, 70 S.Ct. 457, 458, 94 L.Ed. 604 (1950).

The Pardon Attorney in the Department of Justice receives, investigates, and makes recommendations about pardon applications for the Attorney General, who advises the President. 28 C.F.R. §§ 0.35–.36, 1.1–1.7. In investigating these applications, the Pardon Attorney may use reports or services of other agencies, including the FBI. *Id.* §§ 0.35, 1.7(a). He requested the FBI's assistance in verifying Binion's pardon application. That bureau made investigations and compiled records with the results, incorporating information from unrelated criminal investigations.

Binion's pardon applications were unsuccessful. In 1979, while a new application was pending, he made requests to the Department of Justice under the FOIA and the Privacy Act for all records about his pardon applications.

Binion's disclosure requests were denied. After exhausting his administrative remedies, he filed this action seeking an order directing release of the materials.

The government subsequently released most of the information to him. Of the 49 documents the FBI had compiled, all were released, minus certain excisions. Of the

140 documents the Pardon Attorney had compiled, 111 were released in full and 17 in part.

The trial judge concluded that, unless the remaining material came within both an FOIA exemption and a Privacy Act exemption, it had to be disclosed. The government has not pursued this issue, and it is not before us in this appeal. In any event, the Privacy Act specifically forbids reliance on an FOIA exemption to withhold material disclosable to the individual under the Privacy Act. 5 U.S.C. § 552a(q).

The Office of the Pardon Attorney withheld from 39 documents it had compiled on Binion material containing advisory information, deliberative comments, opinions, and recommendations. It cited the FOIA's "deliberative process" exemption, 5 U.S.C. § 552(b)(5) ("Exemption 5") and the Privacy Act's "general exemption," *id.* § 552a(j)(2),[1] for these withholdings. The trial judge determined that as a matter of law the Pardon Attorney's documents did not fit within the language of the applicable Privacy Act exemption and ordered them disclosed.

The government moved for reconsideration, arguing that ten of the documents had been compiled before Binion's "release from supervision" and therefore qualified for the Privacy Act exemption. Apparently viewing this as yet another dilatory tactic by the government, the trial judge refused to credit the argument and responded that in any event the government had failed to substantiate its FOIA Exemption 5 claim for these withholdings.

The FBI withheld from its reports only material identifying special agents, confidential sources, and third parties. This material is concededly exempt from Privacy Act disclosure.

But the trial judge reasoned that any material originated solely in response to Binion's pardon application was not "compiled for law enforcement purposes" and therefore did not fit the FOIA exemption invoked, 5 U.S.C. § 552(b)(7).[2] He then ordered this material disclosed, even though it revealed the identity of confidential sources.

Ultimately he allowed the FBI to withhold material, incorporated into Binion's pardon file, that had been collected in independent criminal investigations. Only the identifying material in six documents is at issue here.

## II. EXEMPTION FROM DISCLOSURE

The information sought is sensitive: Release of such information to the subject would jeopardize the integrity of the investigative process, invade the right of candid and confidential communications among officials concerned with recom-

---

1. The Privacy Act exemption at issue here reads as follows:

   (j) General Exemptions. The head of any agency may promulgate rules . . . to exempt any system of records within the agency . . . if the system of records is—

   .        .        .        .        .

   (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) infor-

mation compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.
   5 U.S.C. § 552a(j)(2).

2. The FOIA exemption invoked reads in pertinent part:

   (b) This section does not apply to matters that are—

   .        .        .        .        .

   (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source. . . .
   5 U.S.C. § 552(b)(7)(D).

mending clemency decisions to the President, and disclose the identity of persons who furnished information to the Government under an express or implied promise that their identities would be held in confidence.

28 C.F.R. § 16.79.

## A. Pardon Attorney Records

The Privacy Act, 5 U.S.C. § 552a, permits one to have access to records federal agencies maintain on him so that he may correct inaccuracies. *Id.* § 552a(d). Agencies may promulgate rules to exempt specified classes of information from the access provisions. The Office of the Pardon Attorney has done so, *see* 28 C.F.R. § 16.79, to exempt the material specified in the Privacy Act's "general exemption," 5 U.S.C. § 552a(j)(2).

This general exemption allows criminal law enforcement agencies, including pardon authorities, to withhold three categories of information: (A) "rap sheets"; (B) information compiled for the purpose of a criminal investigation; and (C) reports on an individual compiled at any stage of enforcement proceedings between arrest or indictment through release from supervision. *See* note 1, *supra.*

The trial judge determined that the withheld pardon attorney documents did not fit the statutory description in any of the three categories.

■ The Pardon Attorney's first ten documents were compiled before November 28, 1966, the date on which Binion completed the obligations connected with his conviction. Subsection (C) of the general exemption clearly protects these from Privacy Act access. The remaining 29 documents, compiled thereafter, present us with a more difficult problem.

Pardons for federal offenses are constitutionally committed to the sole discretion of the President. He must be able to rely on the untrammeled advice of those charged with the task of assisting him in exercising this discretion.

As the Supreme Court said in an opinion dealing with the President's pardon authority:

"[T]he pardoning power was intended to be generally free from legislative control.... [T]he power flows from the Constitution alone, not from any legislative enactments, and ... it cannot be modified, abridged, or diminished by the Congress."

*Schick v. Reed,* 419 U.S. 256, 263, 266, 95 S.Ct. 379, 383, 385, 42 L.Ed.2d 430 (1974).

■ Thus we examine this Privacy Act exemption with some care, to determine whether Congress intended to subject the Pardon Attorney's deliberations to disclosure. We do not believe that Congress so intended.

Legislative history reveals an ongoing concern that Privacy Act disclosures not interfere with law enforcement activities. The original Senate bill exempted law enforcement information if the access provisions would "seriously damage or impede the purpose for which the information is maintained." S.Rep. No. 1183, 93d Cong., 2d Sess. 75 (1974), *reprinted in* 1974 U.S. Code Cong. & Ad.News 6916, 6989.

The House version, which was substituted in large part for the Senate version, exempted criminal justice records. The House Report explained,

The Committee believes that such a broad exemption is permissible for these ... records because they contain particularly sensitive information.... Criminal justice records are so different in use from other kinds of records that their disclosure should be governed by separate legislation.

H.R.Rep. No. 1416, 93d Cong., 2d Sess. 18 (1974), *reprinted in* Senate & House Comms. on Gov't Operations, 93d Cong., 2d Sess., Legislative History of the Privacy Act of 1974, S. 3418 (P.L. 93–579): Source Book on Privacy 294, 311 (1976) (hereinafter cited as Source Book on Privacy).

The House Report urged agencies to make exempt records available to the person concerned when they could do so "without clearly infringing on the ability of the agencies to fulfill their missions," implying

that the purpose of the general exemption was to protect each agency's central mission. *Id. See also* 120 Cong.Rec. 40,411 (1974) (statement of Sen. Hruska); *id.* at 36,906–07 (statements of Sens. Hruska and Percy).

The threshold language of the general exemption explicitly includes pardon authorities among the criminal law enforcement agencies protected. Language in an early version of the bill limiting law enforcement agencies to those empowered to make an arrest and limiting exempt investigative information to that compiled in investigating a specific criminal act was rejected. *Compare* 5 U.S.C. § 552a *to* S. 3418 as amended September 26, 1974, § 301(8)(A), (11), *reprinted in* Source Book on Privacy, 97, 146–47 (1976).

The Pardon Attorney's assessment of a pardon application is clearly an investigation centrally involving "criminal justice records," the phrase used in the House Report, *supra,* to describe records protected by the general exemption.

Though a pardon is a civil proceeding, for Privacy Act purposes pardon authorities are deemed criminal law enforcement authorities. Thus, the Pardon Attorney's investigation and assessment of a pardon application can fit under 552a(j)(2)(B), "information compiled for the purpose of a criminal investigation."

We seek to avoid a remand of this already protracted case. We must consider therefore the government's claim that these documents qualify for FOIA Exemption 5. It has submitted an affidavit and accompanying index as prescribed in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820, 826 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) and *Ollestad v. Kelley,* 573 F.2d 1109, 1110 (9th Cir. 1978).

The legal sufficiency of this affidavit is a question of law. *Cf. Hardy v. BATF,* 631 F.2d 653, 657–58 (9th Cir.1980). Plaintiff's objections to the index were briefed below, and that record is before us.

We conclude that the affidavit satisfies the standards set forth in *EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973). "[T]he government need not specify its objections in such detail as to compromise the secrecy of the information." *Church of Scientology v. Department of the Army,* 611 F.2d 738, 742 (9th Cir.1980). If the description were more specific, as plaintiff demands, it would "reveal that which the agency wishes to conceal." *Founding Church of Scientology v. Bell,* 195 U.S.App.D.C. 363, 603 F.2d 945, 949 (1979).

Any factual material, which plaintiff argues might be severable, is interwoven with and demonstrative of the deliberative process. Plaintiff has already received the non-exempt factual portions of the FBI documents that are the predicate for the advisory information in the Pardon Attorney's deliberative documents. He is free to inform the Pardon Attorney of any factual errors. Any FBI information protected by FOIA Exemption 7 is derivatively exempt in the Pardon Attorney's documents. *FBI v. Abramson,* —— U.S. ——, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982).

**B.   *FBI Records***

The FBI has excised only material identifying confidential sources who assisted in the investigation of Binion's pardon application. The government contends that this information is exempt under FOIA Exemption 7, 5 U.S.C. § 552(b)(7)(D), as "investigatory records compiled for law enforcement purposes" that would "disclose the identity of a confidential source."

Some circuits, including this, have decided that law enforcement agencies such as the FBI should be accorded special deference in an Exemption 7 determination. *See, e.g., Pratt v. Webster,* 673 F.2d 408, 420–21 (D.C.Cir.1982); *Kuehnert v. FBI,* 620 F.2d 662, 666–67 (8th Cir.1980); *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 748 (9th Cir.1979); *Irons v. Bell,* 596 F.2d 468, 474–75 (1st Cir.1979).

■ In this circuit, an agency with a clear law enforcement mandate such as the FBI need establish only a "rational nexus" between its law enforcement duties and the document for which Exemption 7 is claimed. *Church of Scientology v. United States Dep't of the Army, supra,* 611 F.2d at 748; *accord, Dunaway v. Webster,* 519 F.Supp. 1059, 1076 (N.D.Cal.1981).

■ We believe that information compiled by the FBI in a pardon applicant investigation satisfies the rational nexus test. FBI pardon applicant investigations are authorized by federal regulation and are part of the duties of this law enforcement agency.

One purpose of pardon investigations is to determine whether the applicant is currently engaging in criminal activity and thus should be ineligible for a pardon. The FBI conducts pardon investigations to assist an agency that Congress has classified as one "which performs as its principal function [an] activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2).

Moreover, the determination whether to grant a pardon has clear law enforcement implications. Convicted felons suffer from disabilities that a pardon would remove. These may include a prohibition on carrying firearms, use of the conviction for impeachment when testifying, and ineligibility for government employment, public office, juror service, and some professions such as the practice of law.

Courts using the rational nexus test have protected confidential sources even in FBI investigations of questionable legality. *Pratt v. Webster, supra,* 673 F.2d at 422–24; *Ramo v. Department of the Navy,* 487 F.Supp. 127, 131–33 (N.D.Cal.1979), *aff'd mem.,* 692 F.2d 765 (9th Cir.1982). *A fortiori,* we should protect these sources in FBI pardon investigations, which are clearly legitimate.

We find unpersuasive plaintiff's argument that the FBI keeps pardon investigation materials in its "applicant files," not in its "criminal investigative files."

Other courts have concluded that material in the FBI's applicant files could qualify for Exemption 7 treatment. *Information Acquisition Corp. v. Department of Justice,* C.A. No. 77–0884 (D.D.C. Dec. 10, 1981) (candidate for federal judgeship); *Globe Newspapers v. Department of Justice,* No. 77–3301–K (D.Mass. Aug. 12, 1980) (pardon applicant); *Koch v. Department of Justice,* 376 F.Supp. 313, 315 (D.D.C.1974) (candidates for high government positions). *Cf. Pope v. United States,* 599 F.2d 1383 (5th Cir.1979) (background file on fitness of attorney to practice before the IRS); *Frank v. Department of Justice,* 480 F.Supp. 596 (D.D.C.1979) (investigative file about FBI agent's alleged mismanagement of field office).

Our decision today is in harmony with the Supreme Court's recent decision construing FOIA Exemption 7, *FBI v. Abramson,* ——— U.S. ———, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). In that case, the Court answered the plaintiff's argument that the exceptions must be interpreted narrowly:

> While Congress established that the basic policy of the Act is in favor of disclosure, it recognized the important interests served by the exemptions.

*Id.,* 102 S.Ct. at 2064. The Court therefore declined to engage in a "formalistic reading" of this exemption. *Id.*

We decline similarly to do so here. In formulating Exemption 7 as it now stands, Congress "intended to reaffirm its protection of confidential sources . . . so that law enforcement agencies would not be adversely affected in their lawful investigatory duties." *Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 425–26 (9th Cir.1979). To require the FBI to reveal its confidential sources would deter citizen cooperation in pardon investigations and ultimately restrict the flow of data the President needs for the informed exercise of his constitutional prerogative to grant or deny a pardon.

CONCLUSION

In light of these considerations, we cannot uphold the district court's disclosure order.

Reversed.