**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK JORDAN,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF JUSTICE; FEDERAL BUREAU
OF PRISONS,

      Defendants-Appellees.

No. 10-1469

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:07-CV-02303-REB-KLM)**

---

Submitted on the briefs:[*]

Mark Jordan, Pro Se.

John F. Walsh, United States Attorney, Hayley Elizabeth Reynolds, Assistant
United States Attorney, Denver, Colorado, for Defendants-Appellees.

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Mark Jordan brought this action pro se, raising claims under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. The district court entered judgment in favor of defendants United States Department of Justice (DOJ) and Federal Bureau of Prisons (BOP or Bureau). Mr. Jordan appeals. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

Mr. Jordan was convicted of multiple armed robberies in 1994 and the stabbing death of a fellow inmate in 1999. *See United States v. Jordan*, 485 F.3d 1214, 1216 (10th Cir. 2007). When he filed this action, he was imprisoned in Florence, Colorado, at the United States Penitentiary Administrative Maximum Facility, commonly known as the ADX or the Supermax. Mr. Jordan claimed that defendants improperly denied eight separate requests for information he made pursuant to the FOIA or the Privacy Act. The denials of three of those requests are at issue in this appeal.

### A. The agency denials

In the first request (Claim II in his complaint), Mr. Jordan asked that, under the FOIA, the BOP "provide [him] with a complete list of staff names and titles for all staff at the [Supermax]." R. at 284. The FOIA "requires federal agencies

-2-

to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1261-62 (2011). The BOP denied Mr. Jordan's Claim II request under Exemption 7F, R. at 288, which applies to any "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F). Mr. Jordan appealed administratively to the DOJ's Office of Information and Privacy (OIP), which affirmed.

In the second request (Claim III in his complaint), Mr. Jordan invoked both the FOIA and the Privacy Act in asking the BOP for "all documents in any and all Bureau psychological and psychiatric files relating to [him] and promulgated or dated January 1, 2004 through to the date of [his] request." R. at 297. "The Privacy Act generally allows individuals to gain access to government records on them and to request correction of inaccurate records." *Gowan v. U.S. Dep't of the Air Force*, 148 F.3d 1182, 1187 (10th Cir. 1998). The BOP released thirty-six pages of documents to Mr. Jordan but redacted one paragraph based on FOIA Exemptions 2 and 5. R. at 301-02. Exemption 2 applies to "matters that are . . . related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 5 applies to "matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

Mr. Jordan appealed to the OIP, which affirmed the withholding of the redacted information under Exemption 2. R. at 312.

In the third request to the BOP (Claim IV in his complaint), Mr. Jordan invoked the FOIA and the Privacy Act in seeking "a copy of all mail matter that was sent to or from [him] and copied by staff at the ADX Florence." *Id.* at 314. The BOP identified 495 pages of copied correspondence but denied the request in full under Exemptions 2, 7E, and 7F. R. at 318. Exemption 7E applies to any "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The OIP affirmed under Exemptions 2 and 7E. R. at 328.

## B.     The district court's decision

In this action, Mr. Jordan sought an injunction requiring the BOP to release the withheld material. The district court reached its final judgment by ruling on a series of summary judgment motions and adopting the reports and recommendations of a magistrate judge. As to Mr. Jordan's Claim II request for the Supermax staff roster, the magistrate judge concluded that defendants had to disclose the roster but could redact the names of the employees under Exemption 7F. *Jordan v. U.S. Dep't of Justice*, No. 07-cv-02303-REB-KLM,

2010 WL 3023795, at \*9 (D. Colo. Apr. 19, 2010) (*Jordan II*).  The magistrate judge determined that because the "BOP is a law enforcement agency," the staff roster was "'compiled for law enforcement purposes,'" *id.* at \*5 (quoting § 552(b)(7)), which is the "threshold requirement" for Exemption 7, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 148 (1989).  The magistrate judge alternately "conclude[d] that the ADX staff roster is rationally related to the furtherance of [the] BOP's general law enforcement mission of protecting inmates, staff, and the public," *Jordan II*, 2010 WL 3023795, at \*5, and therefore was compiled for a law enforcement purpose.  The magistrate judge then determined that releasing the names of staff members "'could reasonably be expected to endanger the life or physical safety of any individual'" by exposing them to threats, manipulation, and harm.  *Id.* at \*6 (quoting § 552(b)(7)(F)).

Regarding the Claim III request, defendants argued that the redacted portion of Mr. Jordan's psychological records were withheld because "the writer included the subjective perception of another staff member, and advised all staff regarding appropriate actions to take with regard to [Mr. Jordan]."  *Id.* at 221.  The magistrate judge determined the redaction was exempt from disclosure under a judicially crafted subdivision of Exemption 2 spawned in *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981), that had come to be known as "High 2."  Until the Supreme Court recently declared High 2 invalid,

*see Milner*, 131 S. Ct. at 1265 (discussed in more detail below), High 2 protected from disclosure material that is "predominant[ly] internal[]" in nature "if disclosure significantly risks circumvention of agency regulations or statutes," *Crooker*, 670 F.2d at 1074.[1] The magistrate judge rejected defendants' argument that the material was exempt under what had become known as "Low 2," which applies to an agency's internal materials "concerning human resources and employee relations," *Milner*, 131 S. Ct. at 1263. The magistrate judge also concluded that the redacted material was exempt from disclosure under a provision of the Privacy Act, § 552a(j)(2)(C). *Jordan v. U.S. Dep't of Justice*, 2009 WL 2913223, at *26-*27 (D. Colo. Sept. 8, 2009) (*Jordan I*). Section 552a(j)(2)(C) permits an agency that "performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . the activities of . . . correctional . . . authorities," to promulgate rules exempting from otherwise applicable Privacy Act requirements any "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." The magistrate judge concluded that the redacted material was contained in the BOP's Inmate Physical and Mental Health Record System, which is a system of records exempt from Privacy Act disclosure requirements under a BOP regulation, 28 C.F.R.

---

[1]     Only the Second, Seventh, and Ninth Circuits had adopted *Crooker*'s interpretation of Exemption 2 prior to *Milner*. *See Milner*, 131 S. Ct. at 1263.

§ 16.97(a)(6), and within the parameters of § 552a(j)(2)(C).  *See Jordan I*,

2009 WL 2913223, at \*26-\*27.

As to Mr. Jordan's Claim IV request for a copy of the mail the BOP copied,

the magistrate judge determined that the material was exempt from disclosure

under FOIA Exemption 7E and the Privacy Act.  According to defendants, as part

of investigating potential violations of federal criminal law and BOP regulations

and policies within the ADX, the ADX's Special Investigative Supervisor's office

(SIS Office) copies items of prisoner correspondence thought to be of

investigative value.  R. at 252, ¶¶ 56-57.  Defendants argued, and the magistrate

judge agreed, that the copied mail constituted "records or information compiled

for law enforcement purposes," § 552(b)(7), and that releasing the copied mail

would reveal "[t]he technique and procedure for determining which items were of

interest," thereby enabling inmates to "circumvent staff's efforts," R. at 252, ¶ 57.

Accordingly, the magistrate judge concluded that the copied mail was protected

by Exemption 7E.  *Jordan I*, 2009 WL 2913223, at \*16.  The magistrate judge

also concluded that the copied mail was maintained in the BOP's Inmate Central

Records System, a system of records exempted from Privacy Act disclosure under

§ 552a(j)(2)(C) and 28 C.F.R. § 16.97(a)(4).  *See Jordan I*, 2009 WL 2913223,

at \*26-\*27.

## DISCUSSION

### A. Standard of review

"In FOIA cases, the standard of review of a grant of summary judgment is de novo, if the district court's decision had an adequate factual basis." *Audubon Soc'y v. U.S. Forest Serv.*, 104 F.3d 1201, 1203 (10th Cir. 1997). The parties do not claim that the district court lacked an adequate factual basis, so our review is de novo. *See id.* The agency bears the burden of demonstrating that a claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). We also review de novo the grant of summary judgment on Privacy Act claims. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1111-12 (D.C. Cir. 2007). And because the district court granted summary judgment, "we review the record and all reasonable inferences to be drawn therefrom in the light most favorable to [Mr. Jordan]." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007).

### B. Exemption 7's requirement that materials be "compiled for law enforcement purposes"

Mr. Jordan's first argument concerns the proper construction and application of Exemption 7's threshold requirement that materials be "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Mr. Jordan urges us to reject the two tests developed in other circuits (the "per se rule" and the "rational nexus test") and instead look to whether "the record or information at issue was compiled for purposes of a statutorily mandated or

authorized agency proceeding taken in the course of enforcing a sanction under the criminal or civil laws of the United States, as opposed to compilations related to general operational, administrative, or managerial duties." Aplt. Opening Br. at 14. "In other words," Mr. Jordan says, "the agency must show that the records or information were compiled for purposes of actually enforcing a law, and not merely in the course of operating under the law." *Id.* (emphasis omitted). We reject Mr. Jordan's proposed formulation and instead adopt the per se rule.

### 1.    Mr. Jordan's proposed test

We construe the FOIA "broadly," "in favor of disclosure," and "its exemptions are to be narrowly circumscribed." *Trentadue*, 501 F.3d at 1226. Even so, we reject Mr. Jordan's proposed interpretation. The statute refers to "law enforcement *purposes*," not "law enforcement *proceedings*," and it does not mention anything about enforcing a sanction. The only reference to an enforcement proceeding appears in § 552(b)(7)(A), which describes one of the six possible harms to law enforcement purposes ("could reasonably be expected to interfere with enforcement proceedings") sufficient to withhold information under Exemption 7 once the threshold law-enforcement-purposes requirement is met. No "enforcement proceeding" is necessary "to satisfy the 'law enforcement purpose' criterion." *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982). We also note that in his concurring opinion in *Milner*, Justice Alito explained that the phrase "for law enforcement purposes" is broader than Mr. Jordan suggests: "The

ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses . . . but also proactive steps designed to prevent criminal activity." *Milner*, 131 S. Ct. at 1272. Thus, the phrase also "reasonably encompasses information used to fulfill official security and crime prevention duties." *Id.*

### 2. The "per se rule" and the "rational nexus test"

Having rejected Mr. Jordan's proposed interpretation of "compiled for law enforcement purposes," we next consider what test to use in evaluating defendants' reliance on Exemptions 7E and 7F. As noted, courts have developed two approaches, neither of which this circuit has expressly adopted. Under the "per se rule," adopted by the First, Second, Sixth, and Eighth Circuits, "documents compiled by law enforcement agencies 'are inherently records compiled for "law enforcement purposes" within the meaning of Exemption 7.'" *Trentadue*, 501 F.3d at 1235 (quoting *Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987)). *See also Jones v. FBI*, 41 F.3d 238, 245-46 (6th Cir. 1994) (adopting per se rule); *Williams v. FBI*, 730 F.2d 882, 883-86 (2d Cir. 1984) (same); *Kuehnert v. FBI*, 620 F.2d 662, 666-67 (8th Cir. 1980) (same); *Irons v. Bell*, 596 F.2d 468, 473-76 (1st Cir. 1979) (same).

The other approach, dubbed the "rational nexus test," has been adopted by the Third, Ninth, and District of Columbia Circuits. *See, e.g.*, *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 184-86 (3d Cir. 2007); *Pratt*, 673 F.2d

at 419-21; *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 748 (9th Cir. 1979). The application of the rational nexus test depends on whether law enforcement is the primary function of the agency invoking Exemption 7; if it is, then "'a court can accept less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement.'" *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) (quoting *Pratt*, 673 F.2d at 418). Under this deferential approach, a law enforcement agency must establish a rational nexus between the records or information it seeks to withhold and "its authority to enforce a statute or regulation." *Abdelfattah*, 488 F.3d at 186. But if the primary function of an agency is not law enforcement, then the agency "must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document." *Church of Scientology*, 611 F.2d at 748.[2]

---

[2] Our summary of the rational nexus test would be incomplete without pointing out that a number of cases reference an "investigation" when discussing that test. *See, e.g.*, *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (requiring a law enforcement agency to "establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and a possible security risk or violation of federal law'") (citation omitted) (quoting *Pratt*, 673 F.2d at 420).

However, the 1986 amendments to the FOIA broadened the scope of Exemption 7's threshold requirement beyond investigatory records. Formerly, "Exemption 7 required a threshold showing that the materials in question were '*investigatory* records compiled for law enforcement purposes.'" *Tax Analysts*, 294 F.3d at 79 (emphasis added) (quoting 5 U.S.C. § 552(b)(7) (1982)). The 1986 amendments deleted the word "investigatory," and changed the language to "records or information compiled for law enforcement purposes." By deleting the

(continued...)

-11-

Although Mr. Jordan opposes the application of either test because each turns on the nature of the agency involved, he argues that, of the two, the more stringent arm of the rational nexus test applies to the BOP because it is a "mixed function" agency, that is, one with both law enforcement and administrative purposes. As we proceed to discuss, we disagree that the BOP is a "mixed function agency," and we conclude that the per se rule is the proper approach.[3]

### 3. The BOP is primarily a law enforcement agency

There appears to be no defined test for determining whether an agency is primarily a law enforcement agency. To our knowledge, only one circuit court, *Duffin v. Carlson*, 636 F.2d 709, 713 (D.C. Cir. 1980), has identified the BOP as "a criminal law enforcement authority" for Exemption 7 purposes. *Duffin* does

---

[2](...continued)
word "investigatory," Exemption 7 now applies to "internal agency materials . . . even when the materials have not been compiled in the course of a specific investigation." *Id.* Thus, although an investigation is no longer required, those cases requiring an investigation as part of an agency's burden with regard to Exemption 7's threshold requirement that materials be "records or information compiled for law enforcement purposes" appear to be "good law" when an investigation is in fact involved. *See id.* at 78; *see also Abdelfattah*, 488 F.3d at 185 (rejecting prior circuit requirement of an investigation as dicta because an investigation was in fact involved, and recognizing Exemption 7's broader reach after the 1986 amendments).

[3]    The magistrate judge decided that under either test, the staff roster was properly withheld, *Jordan II*, 2010 WL 3023795, at *5, but appears to have applied the rational nexus test to the withholding of Mr. Jordan's mail under Exemption 7F, *see Jordan I*, 2009 WL at *15 (finding there to be "no reasonable dispute" that the BOP copies certain pieces of inmate correspondence for a law enforcement purpose).

not contain a detailed analysis on the point, but the court recognized that "[p]risons perform as their principal function one of the most important duties pertaining to the enforcement of criminal laws, *i.e.*, the execution of sentences in criminal cases." *Id.* Our review of various statutory mandates cause us to agree with the *Duffin* court's conclusion.

The BOP is an integral component of a comprehensive federal law enforcement system. By statute the BOP is tasked with, among other things, "the management and regulation of all Federal penal and correctional institutions," 18 U.S.C. § 4042(a)(1), and "provid[ing] suitable quarters and provid[ing] for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise," *id.* § 4042(a)(2). Implicit in these tasks is the plain fact that the BOP's primary purpose is to confine prisoners and prevent their escape. Under 18 U.S.C. § 3050(1), BOP officers and employees are authorized to "make arrests" for violations of several statutory sections describing "escape" offenses, specifically, 18 U.S.C. §§ 751 and 752, and 28 U.S.C. § 1826(c). There can be no doubt that making arrests is a law enforcement function. Moreover, because escape is a criminal act, preventing it constitutes enforcement of the law. *Cf. Milner*, 131 S. Ct. at 1272 (Alito, J., concurring) ("law enforcement includes . . . proactive steps designed to prevent criminal activity"). In addition to its primary law enforcement functions relating to escape, BOP officers perform other basic

law enforcement functions within BOP facilities, including making arrests for other criminal offenses, *see* 18 U.S.C. § 3050(1)-(3); seizing prison contraband, *see id.* § 4012; and performing searches of non-inmates, *see* 28 C.F.R. §§ 511.10 to 511.16, and inmates, *see id.* §§ 552.10 to 552.14.

Our conclusion that the BOP is primarily a "law enforcement agency" rather than a "mixed-function" agency is bolstered by the Privacy Act, where Congress designated that "an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" includes "correctional authorities."  5 U.S.C. § 552a(j)(2).  In approving this designation, the *Duffin* court observed that, as a law enforcement agency, "prison authorities also necessarily have the obligation . . . to impose discipline for violation of the criminal laws and prison regulations by convicted prisoners who are confined in their custody.  To do this the prison must investigate and maintain sources of intelligence.  In so acting prisons perform law enforcement functions." *Duffin*, 636 F.2d at 713.

Further support for our conclusion can be found in statutes that designate BOP employees as law enforcement officers for purposes of federal retirement benefits.  For example, 5 U.S.C. § 8331(20) defines "law enforcement officer" as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States."  The definition specifically

-14-

includes "employees of the Bureau of Prisons." *Id.* § 8331(20)(A). *See also* 5 U.S.C. § 8401(17)(D)(i) (providing similar definition of "law enforcement officer" for Federal Employee Retirement Services benefits).

Based on the foregoing analysis, we hold that the BOP is primarily a "law enforcement agency" for purposes of FOIA analysis.

### 4. The per se rule is the proper approach

Having concluded that the BOP is primarily a law enforcement agency for FOIA purposes, we now consider whether to apply the per se rule, the deferential branch of the rational nexus test, or some other test. We conclude that the per se rule is the proper approach.

The per se rule was developed in *Irons v. Bell*, 596 F.2d 468 (1st Cir. 1979), a case involving the FBI's withholding of documents under a portion of Exemption 7D that protects information that "could reasonably be expected to disclose the identity of a confidential source," § 552(b)(7)(D). The district court had held that the FBI's affidavit was insufficient to establish a law enforcement purpose for each of the requested documents. In reversing, the First Circuit concluded that, "[a]t best, we glean that the requirement of a law enforcement purpose serves as a condition on Exemption 7 when an agency has both administrative and enforcement functions." *Id.* at 473. The court "not[ed] that the FOIA exemptions that do not purport to require investigations or law enforcement purpose deal with types of material likely to be found anywhere

-15-

within government records." *Id.* In comparison, the court observed, Exemption 7 "contains a long list of types of material likely to be found in the files of law enforcement agencies like the FBI, the disclosure of which would undoubtedly be harmful, especially if it was compiled by a law enforcement agency." *Id.* The *Irons* court identified a dual purpose in "[t]he character of the materials excluded under Exemption 7" that "at least suggests that 'law enforcement purpose' is as much a description of the type of agency the exemption is aimed at as it is a condition on the use of the exemption by agencies having administrative as well as civil enforcement duties." *Id.* at 474.

We find this analysis persuasive. Further, as aptly summarized by the Eighth Circuit's adoption of the per se rule in *Kuehnert*, the *Irons* court provided three policy reasons supporting its construction of Exemption 7's "law enforcement purposes" requirement:

> First, the court observed that if the unjustified nature of an FBI investigation made exemption 7 inapplicable, material constituting an unwarranted invasion of personal privacy would be subject to disclosure, with resultant harm to innocent individuals. [*Irons*, 596 F.2d] at 474. Second, "the loss of Exemption 7 due to unwarranted FBI activity would cost the society the cooperation of those who give the FBI information under an express assurance of confidentiality," without any concomitant benefit. *Id.* Third, interpreting the statute to require a showing of bona fide law enforcement purposes would force on district courts the unmanageable burden of "second or third guessing the judgment of a Special Agent in Charge that an investigation was warranted." *Id.* We find all these concerns pertinent and compelling here.

*Kuehnert*, 620 F.2d at 666 n.9 (brackets omitted).

-16-

In *Williams v. FBI*, the Second Circuit followed *Irons* and *Kuehnert*, *see Williams*, 730 F.2d at 886, and provided perhaps the most compelling argument in favor of the per se rule. The *Williams* court pointed out that originally, Exemption 7, in its entirety, rendered the FOIA's disclosure requirements inapplicable to "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." 5 U.S.C. § 552(b)(7) (1964 Supp. III). "This broad language was adopted because Congress believed that 'it is necessary for the very operation of our Government to allow it to keep confidential certain material such as the investigatory files of the [FBI].'" *Williams*, 730 F.2d at 884 (brackets and ellipsis omitted) (quoting S. Rep. No. 89-813, at 3 (1965)).

In 1974, out of concern that courts were permitting withholding of files simply classified as "investigatory files compiled for law enforcement purposes," Congress modified Exemption 7 in two ways. *Id.* It replaced the word "files" with "records," and it created the six categories of exempt law enforcement records set out in § 552(b)(7)(A)-(F). *Id.* at 884. In so doing, Congress did not "indicate[] that it intended to modify [prior court decisions that] treated the phrase ["compiled for law enforcement purposes"] as a broad, descriptive classification, the use of which was largely determined by the agency in question." *Id.* But it did "radically change[] the phrase's function. Before the amendments, the phrase itself served as a complete shield against release of such

-17-

information.  After the amendments, disclosure of such information is *required* except where the limited subcategories of (A)-(F) apply."  *Id.*

Following on *Irons*, *Kuehnert*, and *Williams*, the Sixth Circuit in *Jones v. FBI* agreed that the 1974 creation of Exemption 7's six specifically exempt categories of information (i.e,, § 552(b)(7)(A) through (b)(7)(F)) was "the principal means for narrowing the law enforcement exemption" that previously had been criticized as overbroad.  41 F.3d at 246.  In rejecting the D.C. Circuit's rational nexus test, which was in part based on the overbreadth concern, *see Pratt*, 673 F.2d at 417-18, the *Jones* court was "persuaded that the amendments did not intend to make the law enforcement threshold the principal enforcer of this policy [against overbroad withholding]."  41 F.3d at 246.  "The concern about overbroad withholding," the court concluded, "should therefore be addressed by proper scrutiny of the claimed exemptions themselves and not by use of a blunt instrument at the threshold which would harm the other policies Congress deemed important."  *Id.*

In sum, we consider the analysis and holdings of *Irons*, *Kuehnert*, *Williams*, and *Jones* compelling and therefore adopt the per se rule.  We add that, although the development of the per se rule was based, at least in part, on Exemption 7's former use of the term "investigatory records," the deletion of the word "investigatory" from the statute in 1986 broadened the scope of the exemption, as discussed above.  Plainly, for an agency like the BOP, whose primary function is

law enforcement, all records and information it compiles are in furtherance of its law enforcement function and therefore may be withheld from disclosure under Exemption 7 provided that the agency carries its burden of establishing that release would cause one or more of the harms enumerated in § 552(b)(7)(A) through (b)(7)(F). Accordingly, we hold that under the per se rule, all records and information compiled by an agency, as defined in the FOIA, *see* 5 U.S.C. §§ 551(1), 552(f)(1),[4] whose primary function is law enforcement, are "compiled for law enforcement purposes" for purposes of Exemption 7.[5] Consequently, because the BOP is primarily a law enforcement agency, the records and information for which the BOP invoked Exemption 7 (the Supermax roster and the copies of Mr. Jordan's mail) were "compiled for law enforcement purposes."

---

[4] Under § 551(1), which applies to the FOIA, "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency." Section 552(f)(1) in turn provides that "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

[5] The per se rule still permits agencies whose primary function is not law enforcement to rely on Exemption 7. *See Irons*, 596 F.2d at 473 ("At best, we glean that the requirement of a law enforcement purpose serves as a condition on Exemption 7 when an agency has both administrative and enforcement functions."). However, they will not benefit from the per se rule, and we advance no theory as to what burden such agencies bear in establishing that records or information were compiled for law enforcement purposes.

-19-

**C.     Claim II and Claim IV requests under Exemptions 7E and 7F**

Having decided that the Supermax staff roster and the copies of select pieces of Mr. Jordan's mail meet Exemption 7's threshold "law enforcement purposes" requirement under the per se test, we turn to the specific portions of Exemption 7 the BOP relied on in withholding these records. We will first address the Supermax staff roster.

**1.     Claim II:  the Supermax roster and Exemption 7F**

The BOP invoked Exemption 7F in withholding the Supermax staff roster. As noted, the magistrate judge concluded that the BOP had to release the roster but with staff members' names redacted on the ground that releasing staff names "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F), by exposing them to threats, manipulation, and harm. *See Jordan II*, 2010 WL 3023795, at *6, *9.  On appeal, Mr. Jordan first argues that a provision of BOP Program Statement 1351.05 (2002), which establishes procedures for the release of records under the FOIA and the Privacy Act, forecloses reliance on Exemption 7F with respect to the roster.  That provision states:  "A list of Bureau employees may be generally releasable." R. at 435 (Program Statement 1351.05, Pt. One, § 9.c.).  Mr. Jordan argues that the BOP is compelled to abide by its Program Statement.  The difficulty with Mr. Jordan's argument is its disregard of another provision in the Program Statement permitting BOP staff to "assert any applicable exemption to disclosure

-20-

which is provided under the FOIA." *Id.* at 429 (Program Statement 1351.05, Pt. One, § 7.c.). Thus, the Program Statement permits, rather than forecloses, the assertion of Exemption 7F.

Mr. Jordan also notes that in *Maydak v. United States Department of Justice*, 362 F. Supp. 2d 316 (D.D.C. 2005), the district court "found exemption [7F] inapplicable to shield BOP staff names." Aplt. Br. at 22. Aside from being nonbinding on this court, *Maydak* is clearly distinguishable. The *Maydak* court ordered the release of BOP staff names for two reasons, neither of which is applicable here. First, the BOP failed to establish Exemption 7's threshold requirement that the names were contained in a record compiled for law enforcement purposes. *Maydak*, 362 F. Supp. 2d at 323. Here we have concluded to the contrary in our adoption of the per se rule. Second, the BOP admitted to having a policy of releasing staff names, titles, and salaries to the general public but not to prisoners, and the *Maydak* court concluded that "an agency cannot base its disclosure decisions on the identity of the requester or the purpose of the request." *Id.* Here, there is no indication that the BOP releases the names of Supermax staff to the general public but not to inmates. Accordingly, *Maydak* is

-21-

not persuasive.[6]  Hence, we conclude that the BOP met its burden under Exemption 7F.

### 2.    Claim IV:  copies of Mr. Jordan's mail and Exemption 7E

The BOP relied on Exemption 7E to withhold 495 pages of Mr. Jordan's mail the SIS Office had copied.  Again, Exemption 7E applies if the release of records or information compiled for law enforcement purposes "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The BOP argued that releasing the copied mail would reveal "[t]he technique and procedure used for determining which items [are] of interest," thereby enabling inmates to "circumvent staff's efforts."  R. at 252, ¶ 57.

Mr. Jordan argues that the BOP's own evidence contradicts its rationale. He points to a statement in the affidavit of a BOP paralegal that "[w]hat is copied and placed in the information file is at the discretion of the SIS Technician reviewing the mail and is based on his or her professional judgment and experience."  *Id.* at 500-01, ¶ 8.  Mr. Jordan claims this statement shows there is

---

[6]    We do not consider defendants' alternate arguments, raised for the first time on appeal, that the Supermax Roster was properly withheld under Exemptions 2 and 6.

no technique or procedure used for determining which mail items are of interest—that is, it is left to individual discretion—and therefore any concern about circumvention of the law is unreasonable. He also argues that to the extent the technician's judgment and experience is a technique or procedure, it is now publicly known and therefore cannot be shielded under Exemption 7F.

It does not appear that Mr. Jordan advanced these theories in the district court. The paralegal's affidavit was submitted in response to a court order that, in relevant part, requested a supplemental affidavit addressing the scope of the search for documents responsive to Claim IV. *Id.* at 496. In his response to the supplemental affidavit, Mr. Jordan argued that defendants failed to show that the technician's discretion was "exercised parcel to or exclusively parcel to any law enforcement proceeding, or otherwise and more importantly connect any of the withheld documents/information to any law enforcement purpose or proceeding." *Id.* at 516-17. Accordingly, Jordan forfeited his new theories on this issue. *See Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that a theory is forfeited when a party simply fails to present it to the district court). When a matter is forfeited, we may review for plain error, but that review is limited to whether there was "a clear legal error that implicates a miscarriage of justice." *Id.* Mr. Jordan has not addressed the belated nature of his new theories, let alone argued for plain-error review, which "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.

-23-

**D.     Claim III:  psychological records and Exemption "High 2"**

We now turn to the final FOIA claim in this appeal, the BOP's reliance on Exemption "High 2" in redacting one paragraph of Mr. Jordan's psychological records that allegedly "included the subjective perception of another staff member, and advised all staff regarding appropriate actions to take with regard to [Mr. Jordan]."  R. at 221.  As noted above, by statute, Exemption 2 applies to "matters that are . . . related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption "High 2" was a judicially crafted subdivision of Exemption 2 that protected from disclosure material that is "predominant[ly] internal[]" in nature "if disclosure significantly risks circumvention of agency regulations or statutes."  *Crooker*, 670 F.2d at 1074.  Exemption High 2 recently met its demise in *Milner*, which was issued after the district court's judgment in this case.  In *Milner*, the Court explained that Exemption 2 is limited to "conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits."  131 S. Ct. at 1265.  The Court made clear that "Low 2 is all of 2 (and . . . High 2 is not 2 at all . . . )."  *Id.*

Defendants concede, as they must, that in light of *Milner*, High 2 cannot justify withholding the redacted paragraph of Mr. Jordan's psychological record because the redaction does not concern conditions of employment in a federal agency.  They urge us, however, to consider Exemptions 7E and 7F, even though

-24-

they did not rely on those exemptions in the district court. They argue that under our precedent, *see, e.g.*, *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010), we may affirm on any basis supported by the record. In the alternative, defendants ask us to remand for further development of the record in light of *Milner*. Mr. Jordan, relying primarily on *Maydak v. United States Department of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000) and *Ryan v. Department of Justice*, 617 F.2d 781, 792 (D.C. Cir. 1980), counters that defendants have waived any exemptions they did not advance in the district court. He argues that it would be especially unfair to consider Exemptions 7E and 7F in view of the fact that he never had the opportunity to argue or present evidence against these exemptions. He also contends remand would be improper because *Milner* did not effect a change in the law; it merely clarified which of two competing circuit-court interpretations of Exemption 2 was proper.

While Mr. Jordan's position is not without some force, two factors cause us to side with defendants on this point as to Exemption 7E only. First, in *Milner*, the Court "[could not] think of any document eligible for withholding under Exemption 7(E) that the High 2 reading does not capture: The circumvention standard is the same, and the law enforcement records listed in Exemption 7(E) are 'predominantly internal.'" *Milner*, 131 S. Ct. at 1268. Thus, Exemption 7E is essentially the same as former High 2, with the added requirement that material be "compiled for law enforcement purposes." As defendants argued for both

High 2 and the "per se rule" in the district court, they effectively presented all elements of Exemption 7E.  Mr. Jordan had ample opportunity in the district court and again on appeal to address the circumvention aspect of High 2 and the "law enforcement purposes" requirement of Exemption 7.  Therefore, we do not consider that defendants waived or forfeited Exemption 7E.

The second factor that counsels in favor of considering defendants' Exemption 7E argument is our "reluctance to command do-overs in the district court." *Richison*, 634 F.3d at 1130.  This reluctance is "why we treat arguments for *affirming* the district court differently than arguments for *reversing* it.  We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Id.  See also SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." (internal quotation marks omitted)).  Thus, we may affirm on an alternate legal ground instead of sending the case back to the district court to do the work provided that the alternate "ground [is] within [our] power . . . to formulate," *id.* and the opposing party has had a fair chance to address it, *Reedy v. Werholz,* 660 F.3d 1270, 1276 (10th Cir. 2011).  Here, based on our view that the defendants presented, and Mr. Jordan disputed, all of the elements of Exemption 7E in the district court, it is within our power to consider

Exemption 7E on appeal in lieu of the now-defunct "High 2" exemption. We will not consider Exemption 7F, as the same considerations are not present with regard to it.

Turning then to Exemption 7E, we conclude that the redacted portion of Mr. Jordan's psychological records falls within its compass. Under our per se rule, the redaction meets Exemption 7's threshold requirement of being "compiled for law enforcement purposes." Furthermore, defendants have satisfied the particular requirement of Exemption 7E by showing that releasing the redaction "would disclose techniques for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." § 552(b)(7)(E). Clearly, given that the redacted portion "advised all staff regarding appropriate actions to take with regard to [Mr. Jordan]," R. at 221, a dangerous prisoner with a history of threatening staff with bodily harm, *see Jordan v. Wiley*, 411 F. App'x 201, 204 (10th Cir. Feb. 9, 2011), its release would disclose guidelines for a potential law enforcement investigation by giving information BOP staff would be likely to use in investigating Mr. Jordan's conduct while incarcerated. Further, knowing BOP strategy could make it easier for Mr. Jordan to subvert it, which "could reasonably be expected to risk circumvention of the law" given his history of violence and violent threats.

**E.      Privacy Act rulings**

We now turn to Mr. Jordan's arguments concerning the district court's rulings that his requests for the redacted portion of his psychological file and for the copied mail are exempt from disclosure under the Privacy Act. The BOP maintained Mr. Jordan's psychological records in its Inmate Physical and Mental Health Record System and the copies of his correspondence in its Inmate Central Records System. The magistrate judge concluded that these records were exempt from Privacy Act disclosure because, in 28 C.F.R. § 16.97(a), the BOP has declared the file systems in which they were maintained exempt from disclosure "to the extent that information in [those] systems is subject to exemption pursuant to 5 U.S.C. § 552a(j)."

Mr. Jordan claims the district court reached its conclusion based on the simple fact that the BOP has by regulation exempted from Privacy Act disclosure the file systems in which it keeps his psychological records and the copied mail. He argues that under the BOP's own regulation, the district court was required to evaluate whether those records are exempt under § 552a(j) but failed to do so. He also argues that the records are not exempt under § 552a(j).

We disagree with both arguments. First, the magistrate judge explicitly considered § 552a(j), stating that

> because [the psychological records and copied mail] were generated
> during [Mr. Jordan's] incarceration in federal prison, they are subject
> to exemption pursuant to 5 U.S.C. § 552a(j)(2), which allows

> agencies to exempt "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."

*Jordan I*, 2009 WL 2913223 at *27 (quoting § 552a(j)(2)(C)). Thus, the magistrate judge's conclusion was not based on the mere fact that Mr. Jordan's psychological records and copied mail were contained in an exempt file system.

Second, Mr. Jordan's psychological records and copied mail are exempt under § 552a(j)(2)(C) because they are "identifiable" to Mr. Jordan and were "compiled" during his incarceration.[7] Mr. Jordan argues that his psychological records and copied mail are not "reports" and were not "compiled in the process enforcing the criminal laws," as required by § 552a(j)(2)(C). The first part of this argument is wholly conclusory, lacking any development or support for his interpretation of the word "reports." The second part of this argument cannot stand in view of our FOIA conclusion that these records were compiled for law enforcement purposes.

Mr. Jordan also argues that a BOP regulation, 28 C.F.R. § 513.40, permits disclosure of mail, general correspondence, and other records maintained in a prisoner's Inmate Central File, suggesting that the BOP may not withhold such items under the Privacy Act. This argument overlooks the fact that § 513.40 is permissive, not mandatory; it makes such items "[d]isclosable" without recourse

---

[7] Section 552a(j) provides other exemptions, but defendants do not argue that they apply.

to certain "FOIA procedures." *Id.* The regulation further provides that "[i]f any information *is withheld* from the inmate, staff will provide the inmate with a general description of that information and also will notify the inmate that he or she may file a FOIA request." *Id.* (emphasis added). Thus, § 513.40 does little to abnegate the BOP's ability to exempt mail and general correspondence maintained in its Inmate Central File under § 552a(j) and 28 C.F.R. § 16.97(a).

Mr. Jordan makes a similar argument with regard to his redacted psychological records and BOP regulation 28 C.F.R. § 513.42. However, the regulation clearly permits BOP staff to withhold an inmate's medical records containing "subjective evaluations of medical staff relating to the inmate's care and treatment" if it determines that release "would present a harm to either the inmate or other individuals." 28 C.F.R. § 513.42(c), (d). If dissatisfied with a refusal to release medical records, an inmate can initiate a "formal request for the withheld documents." *Id.* § 513.42(d). Like § 513.40, this regulation does not limit the BOP's ability to exempt medical records contained in its Inmate Physical and Mental Health Record System under 5 U.S.C. § 552a(j) and 28 C.F.R. § 16.97(a).

AFFIRMED. Mr. Jordan's motion for leave to proceed on appeal without prepayment of costs or fees is granted. Mr. Jordan is reminded of his obligation to continue making monthly payments until the filing fee is paid in full.